UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X
                                        :
UNITED STATES OF AMERICA                         INFORMATION
                                        :
        - v. -
                                        :      21 Cr.   75
STEFAN HE QIN,
                                        :
              Defendant.
                                        :
- - - - - - - - - - - - - - - X


### COUNT ONE
### (Securities Fraud)

The United States Attorney charges:

Background

1.   STEFAN HE QIN, the defendant, is a 24-year old
Australian national.  At all times relevant to this Information,
QIN directly and indirectly owned and controlled a number of
corporate entities, including two cryptocurrency investment
funds, the Virgil Sigma Fund LP ("Virgil Sigma") and the VQR
Multistrategy Fund LP ("VQR"), both of which maintain their
principal places of business in New York, New York.

2.   In or about 2017, STEFAN HE QIN, the defendant,
founded Virgil Sigma.  Since its creation, Virgil Sigma
purported to employ a strategy to earn profits from arbitrage
opportunities in the cryptocurrency market, specifically, by
using a trading algorithm to take advantage of price differences

for a number of cryptocurrencies, including Bitcoin and others, in approximately 40 different exchanges around the world, including three exchanges located in the United States.   This strategy was touted by QIN to the investing public as "market-neutral," meaning the fund was not exposed to any risk from the price of cryptocurrency moving up or down and therefore provided a relatively safe and liquid investment.

3.   At all times relevant to this Information, STEFAN HE QIN, the defendant, exercised day-to-day control over Virgil Sigma and was the sole owner of Virgil Sigma's general partner. QIN's responsibilities at Virgil Sigma included, among other things, tracking the fund's balances at different trading exchanges, designing the algorithms to implement arbitrage trading, and preparing monthly investor statements.   On each of the statements that QIN provided to Virgil Sigma's investors over email, QIN declared that "I hereby affirm that to the best of my knowledge and belief, the information contained in this statement is accurate and complete."   QIN also regularly participated in calls with Virgil Sigma investors and other forms of public communication where he touted the growth and success of Virgil Sigma.

4.   Until recently, Virgil Sigma purported to have over $90 million under management from over 100 investors, including dozens of investors in the United States.   According to its

2

public marketing materials, Virgil Sigma has been profitable in every month from August 2016 to the present, with the sole exception of March 2017.

5.    In or about February 2020, STEFAN HE QIN, the defendant, founded VQR.  At all times relevant to this Information, VQR employed a variety of trading strategies and was poised to make or lose money based on the fluctuations in the value of cryptocurrency, *i.e.*, it was not market neutral. QIN was the sole owner of VQR's general partner, but was not involved in VQR's day-to-day operations.  Instead, VQR had its own trading staff, including a head trader (the "Head Trader") and other investment professionals.  Until recently, VQR had at least approximately $24 million under management from investors.

<u>QIN's Scheme to Steal Assets
and Defraud Virgil Sigma's Investors</u>

6.    Since in or about 2017, STEFAN HE QIN, the defendant, has engaged in a scheme to steal assets from Virgil Sigma and defraud its investors.  Rather than investing the fund's assets in a cryptocurrency arbitrage trading strategy, QIN has embezzled investor capital from Virgil Sigma and used the funds for purposes other than the purported arbitrage trading strategy, including but not limited to the following uses:

        a.    QIN used a substantial portion of investor capital stolen from Virgil Sigma to pay for personal expenses

3

such as food, services, and rent for a penthouse apartment in New York City.

b.   QIN used a substantial portion of investor capital from Virgil Sigma to make personal, often illiquid investments in other entities that had nothing to do with cryptocurrencies.  For example, in or about October 2018, QIN invested hundreds of thousands of dollars stolen from Virgil Sigma into a real estate investment.

c.   QIN used a substantial portion of investor capital from Virgil Sigma to invest in crypto-assets that had nothing to do with the fund's stated arbitrage strategy.  For example, in or about 2018, QIN invested funds from Virgil Sigma into certain initial coin offerings ("ICOs"), a speculative form of investing in new issues of cryptocurrency.

7.   As a result of these and other fraudulent activities, STEFAN HE QIN, the defendant, has dissipated nearly all of the investor capital in Virgil Sigma.

8.   While he was engaged in fraudulently dissipating the assets of Virgil Sigma as described above, STEFAN HE QIN, the defendant, regularly lied to the fund's investors about the value, location, and status of their investment capital.  These lies were included an array of investor and public communications including but not limited to the following:

a.   QIN prepared and disseminated monthly statements

4

to investors purporting to record the value of their holdings in Virgil Sigma.  The amounts recorded in these statements did not accurately reflect the results of cryptocurrency trading. Instead, the amounts were made up by QIN and did not disclose the dissipation of assets by QIN.

      b.   QIN also periodically prepared marketing materials for the investing public, including summary reports known as "tear sheets" that fraudulently reported that Virgil Sigma was earning remarkable profits, often with double-digit returns in a single month, month after month.  For example, in or about February and in or about April 2017, QIN falsely reported that Virgil Sigma had earned 48.7% and 35.5% returns, respectively.

      c.   Furthermore, on an annual basis, QIN prepared spreadsheets that purported to show Virgil Sigma's balances at the approximately 40 exchanges where Virgil Sigma purportedly traded in order to prepare tax forms for the fund's investors, also known as schedule K-1s.  As QIN well knew, however, these spreadsheets and the resulting schedule K-1s were false and substantially overstated Virgil Sigma's balances and trading activity on the exchanges.

    9.   As a result of the lies of STEFAN HE QIN, the defendant, about the activity and success of Virgil Sigma in these and other communications, QIN was able to steadily attract

5

new capital to Virgil Sigma thereby (a) ensuring that he was
able to pay off investors' redemption requests, and (b)
projecting the appearance of continued growth to the public.
For example, after QIN and the purported success of his fund
were profiled in the *Wall Street Journal* in or about February
2018, Virgil Sigma experienced substantial growth as new
investors flocked to the fund.

QIN's Attempt to Steal Assets from VQR
to Pay Redemptions to Virgil Sigma Investors

10.  In or about the summer of 2020, STEFAN HE QIN, the
defendant, was having difficulty meeting redemption requests
from certain investors in Virgil Sigma.  In order to access
funds to make those redemptions, and in order to conceal his
fraudulent activities described above, QIN attempted to steal
investor capital from VQR to pay redemptions to Virgil Sigma
investors.

11.  After a few Virgil Sigma investors requested
redemptions that Virgil Sigma could not pay, STEFAN HE QIN, the
defendant, convinced those investors that rather than redeem the
funds outright, the investors would agree to have the funds
withdrawn from Virgil Sigma and transferred into an investment
in VQR.  After months passed and no funds were transferred to
VQR, QIN falsely told these investors that he had requested the
transfer of funds from Virgil Sigma, but that the transfer was

delayed because of an intermediary bank.  QIN showed some of these investors wire transfer requests in order to bolster the impression that QIN was in fact trying to transfer the funds from Virgil Sigma to VQR.  In truth and in fact, however, and as QIN well knew, Virgil Sigma's bank could not effectuate these wire transfers because QIN had dissipated all of Virgil Sigma's assets.

12.  In or about December 2020, faced with additional redemption requests that he could not meet, STEFAN HE QIN, the defendant, demanded that the Head Trader at VQR wind down all trading positions at VQR and transfer a portion of the funds to QIN so that QIN could use that money to pay off these redemptions to Virgil Sigma investors.  QIN issued the demand even though the Head Trader advised QIN that closing out VQR's then-current trading positions, rather than holding those positions in accordance with VQR's directional trading strategy, would result in losses to VQR's investors.  In the course of those conversations, QIN threatened that if the Head Trader did not sufficiently expedite that process, QIN, as the sole owner of VQR's general partner, would need to take over control of all of VQR's accounts in order to access the funds.

13.  At the direction of STEFAN HE QIN, the defendant, the Head Trader accordingly closed out VQR's positions and turned over access to VQR's trading accounts to QIN.  QIN subsequently

attempted to take control of VQR's assets in order to enable QIN
to meet certain Virgil Sigma investor redemption requests.

<u>Statutory Allegation</u>

14.   From at least in or about 2017 through at least in or
about 2020, in the Southern District of New York and elsewhere,
STEFAN HE QIN, the defendant, willfully and knowingly, directly
and indirectly, by use of the means and instrumentalities of
interstate commerce, the mails and the facilities of national
securities exchanges, used and employed manipulative and
deceptive devices and contrivances in connection with the
purchase and sale of securities, in violation of Title 17, Code
of Federal Regulations, Section 240.10b-5, by: (a) employing
devices, schemes and artifices to defraud; (b) making untrue
statements of material facts and omitting to state material
facts necessary in order to make the statements made, in light
of the circumstances under which they were made, not misleading;
and (c) engaging in acts, practices and courses of business
which operated and would operate as a fraud and deceit upon
persons, to wit, QIN fraudulently diverted, stole, and embezzled
investor capital from investors at Virgil Sigma while lying to
the fund's investors about the value, location, and status of
their funds, and attempted to steal assets from VQR in order to
pay redemption requests to Virgil Sigma investors.

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17,

Code of Federal Regulations, Section 240.10b-5; and Title 18,
United States Code, Section 2.)

## FORFEITURE ALLEGATION

15.  As a result of committing the offense alleged in Count
One of this Information, STEFAN HE QIN, the defendant, shall
forfeit to the United States pursuant to Title 18, United States
Code, Section 981(a)(1)(C) and Title 28, United States Code,
Section 2461, any and all property, real and personal, that
constitutes or is derived from proceeds traceable to the
commission of the offense alleged in Count One of this
Information, that the defendant personally obtained.

## Substitute Assets Provision

16.  If any of the above-described forfeitable property, as
a result of any act or omission of the defendant:

    a.  cannot be located upon the exercise of due
diligence;

    b.  has been transferred or sold to, or deposited
with, a third party;

    c.  has been placed beyond the jurisdiction of the
court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which
cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21,

United States Code, Section 853(p), to seek forfeiture of any

other property of the defendant up to the value of the

forfeitable property described above.

(Title 18, United States Code, Section 981;
Title 21, United States Code, Section 853;
and Title 28, United States Code, Section 2461.)


_____
Audrey Strauss
United States Attorney


10

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

**UNITED STATES OF AMERICA**

**v -**

**STEFAN HE QIN,**

Defendant.

### INFORMATION

21 Cr.

(Title 15, United States Code, Sections 78j(b) and 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5;
Title 18, United States Code, Section 2)

AUDREY STRAUSS

United States Attorney.

11