# Statement 1

# VICTIM IMPACT STATEMENT

Victim: Chi-Raie Cheung
Roth IRA Chi-Raie Cheung
USAO Number: 2020R01348
Court Docket Number: 21-CR-00075

Insert the impact of the crime here (or, if a separate victim impact form is attached, please use that form to describe the impact of the crime):

*We began to invest with Virgil Sigma Fund Lp in Oct. 2017. Getting all the positive monthly report and the yearly K-1 report from RICHEY MAY & CO made us feel we invested in a good fund.*

*in Feb. 2019 , I moved partial of my Retirement Roth IRA fund into it and was happy to see good returns. In Dec. 2019, I moved all my Roth IRA into it.*

*I am over 70 years old, ROTH IRA fund saving is my whole life working income accumulation. I was planning to rely on it to have a good retirement.*

*When Stefan told us there is a new fund called VQR Multistrategy Fund LP with a professional team handling it. In Aug. 2020,I requested to transfer all my Roth IRA fund from Virgil Sigma Fund into the VQR fund. Paper were all signed by Stefan and the Aug. 2020 money was all withdrawn from my Virgil Sigma Fund, as indicated in the monthly Virgil Sigma report.*

*I was assuming that my ROTH IRA fund should formally joined VQR fund starting Sep. 2020 and puzzled why I did not receive the statement from the VQR fund as well as the statement I always got from the Virgil Sigma Fund? I kept sending emails to Stefan and his office.*

*In Dec. 2020, we got the news that Stefan was being sued for fraud. What a shock to us in this Pandemic year. My whole family are still praying for things not as bad. Hope the federal court can clear out all for us.*

*It really make me feel so sad. Still do not believe a young man that we trust so much can do this to us. My whole family invests in his funds. My daughters & son-in- laws, my son and his fiansee are all involved.*

*Now I just have to go back to work and prying things are not as bad. We understand investment always has a risk, but need to be handled professionally.*

# Statement 2

# VICTIM IMPACT STATEMENT

Victim: Restitution Receipient
The 1989 Cheung Living Trust
USAO Number: 2020R01348
Court Docket Number: 21-CR-00075

Insert the impact of the crime here (or, if a separate victim impact form is attached, please use that form to describe the impact of the crime):

*I still can not believe that we will get into this kind of horrible situation, just like the Madoff case and Ponzi Scheme. Just because I think he is my son's good friend and will not cheat on us. We are still hoping that this is not true, hope the federal court will find out all the truth for us.*

*My husband and I are over 70 years old and were very pleased to see every month report from Virgil Capital Pty Ltd showing with good return.*

*The yearly K-1 report from RICHEY MAY & CO assures us that we are with a good investment company. When I did my refinance, I even got out more cash to invest into it, hoping that I can pay off my mortgage sooner. We also pay all the tax on those fake capital gains on our yearly tax.*

*When the Pandemic hits, my business was affected. Also my son is prepared to get married. On 9/17/2020, I requested to withdraw$200,000 to prepare for the down turn market and for my son's wedding,*

*It took forever with no response. I begin to sense something went wrong. 2020 Christmas was the worst Chrismas ever when we got the news.*

*It was a shock to all of us. My whole family invested in his fund are all affected. My two daughters and son-in-laws, my son and his fiancee. It is just like a dark cloud hanging over all of us.*

*I was planning to retire from my job , now I have to go back to work. I am still praying for the best, and hoping everything will clear up after the trial.*

# Statement 3

## Olsen, Wendy (USANYS)

| | |
|---|---|
| **From:** | . D |
| **Sent:** | Wednesday, August 18, 2021 11:52 AM |
| **To:** | Olsen, Wendy (USANYS) |
| **Subject:** | RE: Charges against defendant(s) Stefan Qin |
| **Attachments:** | Virgil Sigma Fund - Subscription Agreement [Non-US Investors] Doris Ho (1).pdf; Wire Confirmation_2020.6.4.pdf |

RE: August 19, 2021, 11:00 AM at Courtroom 443, 40 Centre Street, New York, NY 10007 before Judge Valerie Caproni

Dear Ms. Olsen,

I am an investor of the Virgil Sigma Fund and thus I am a victim of the fraudulent case of Virgil Sigma Fund and the fraudulent actions of Stefan Qin.  Please refer to the attached for the original subscription form as a proof of my identity.

Kindly include me in any communication the DOJ is sending to other victims of the same case, as I was not being contacted at all. I am not within the VNS.

I would be appreciated if you could send me the link to the hearing.

As to my victim statement, I couldn't demonstrate how devastating this fraud case is to my personal life.  I am an ordinary white collar woman new to the fund management industry.  Its sales person has presented many supporting documents of the Fund with respect of the security as well as the check and balance from Fund Administrator.  I thus feel obliged to earn a deeper knowledge of this Fund before bringing the Fund to my client.  I made the payment in June 2020 when in the same month the Fund was already proved to have been conducting illegal and unauthorized fund flow.   My investment size has constituted the majority of my hard-earned personal income.  I don't even know what kind of justice I can ask for.

I can be reached at ▇▇▇▇▇▇▇▇▇▇▇▇

Sincerely yours,

Doris Ho

▇▇▇▇▇▇▇

1

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

# VIRGIL SIGMA FUND, LP

## SUBSCRIPTION DOCUMENTS

c/o Ogier Global (Cayman) Limited
89 Nexus Way
Camana Bay
Grand Cayman, KY1-9009
Cayman Islands

FOR NON-U.S. SUBSCRIBERS ONLY

Offeree:_____

Copy #: _____

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

## SUBSCRIPTION INSTRUCTIONS

Prospective investors ("Subscribers") should read the Confidential Private Placement Memorandum of Virgil Sigma Fund, LP (the "Partnership"), the First Amended and Restated Limited Partnership Agreement of the Partnership, as such may be amended from time to time (the "Partnership Agreement") as well as these subscription documents prior to subscribing to the Partnership.  The Subscriber will also need to complete the following steps.

1.      Complete and sign the Suitability Questionnaire.

2.      Complete and sign the Subscription Agreement (including additional representation page, if applicable).

3.      Complete and sign the Internal Revenue Service ("IRS") Form W-8 in accordance with the instructions to such form, available at the IRS website at *www.IRS.gov*.  Complete and sign either the Individual Self-Certification Form (Appendix 1) or Entity Self-Certification Form (Appendix 2).

4.      Send one copy of the completed and executed documents, including adequate anti-money laundering documentation (described in the Anti-Money Laundering Supplement, attached hereto as Appendix 3), to each of the Administrator and General Partner, to arrive as soon as possible, and in any event at least five (5) Business Days prior to the beginning of the month in which the investment will be made. A "Business Day" is a day when the New York Stock Exchange is open for trading.  Please keep a photocopy of the executed documents for your records.

|   |   |
|---|---|
| To the General Partner: | Virgil Sigma Fund, LP |
|   | c/o Virgil Capital LLC |
|   | 89 Nexus Way |
|   | Camana Bay |
|   | Grand Cayman, KY1-9009 |
|   | Cayman Islands |
|   |   |
| To the Administrator: | Virgil Sigma Fund, LP |
|   | c/o Theorem Fund Services |
|   | Chicago Board of Trade Building |
|   | 141 West Jackson Boulevard, Suite 4120 |
|   | Chicago, Illinois 60604 |

5.      Send a completed copy to the Administrator via email: IR@theoremfundservices.com

6.      After notification from the General Partner that the subscription has been accepted, send the intended subscription amount to the Partnership at least three (3) Business Days prior to the beginning of the month in which the investment will be credited to the Subscriber's account. Subscription amounts may be sent by wire according to instructions sent separately from the Subscription Documents.

        Note: It is recommended that the Subscriber have the bank charge its wiring fees separately so that an even amount may be invested.

*Virgil Sigma Fund, LP*
*Subscription Instructions*

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

7.   Upon acceptance of the subscription, a copy of the executed Subscription Agreement, signed as accepted on behalf of the Partnership, will be returned to the Subscriber.  The General Partner or the Administrator may request additional documents as necessary under securities and anti-money laundering laws from any Subscriber.  Please keep a copy of the attached Additional Subscription Form (Appendix 4) and Withdrawal Request Form (Appendix 5) for future use.

*Virgil Sigma Fund, LP*
*Subscription Instructions*

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

## SUITABILITY QUESTIONNAIRE

| | |
|---|---|
| Name of Subscriber | Doris P Ho |
| SSN/ Tax ID | ▇▇▇▇▇▇ |
| Date of Birth (for natural persons) | |
| Country of Citizenship (for natural persons) | Canada |

Type of Subscriber

| | | | | | |
|---|---|---|---|---|---|
| ☑ | Individual | ☐ | Corporation | ☐ | Trust |
| ☐ | Partnership | ☐ | LLC | ☐ | Joint Tenants (with ROS) |
| ☐ | Tenants in Common | ☐ | IRA | ☐ | Foundation |
| ☐ | Endowment | ☐ | Keogh Plan | ☐ | Employee Benefit Plan |
| ☐ | Charitable Remainder Trust | ☐ | Other: _____ | | |

| | |
|---|---|
| Mailing Address | ▇▇▇▇▇▇▇▇▇ |
| Phone | |
| Fax | |
| Email | ▇▇▇▇▇▇ |

| | |
|---|---|
| Residential Address/ Principal Place of Business | same as above |
| Phone | |

*Virgil Sigma Fund, LP*
*Suitability Questionnaire Page - 1*

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

Fax                                _____

Email                              _____

===============================================

Authorized Representative          _____

Address                            _____

                                   _____

Phone                              _____

Fax                                _____

Email                              _____

===============================================

Authorized Signatories

Set forth below are the names of persons authorized by Subscriber to give and receive instructions between the Partnership (or the General Partner) and Subscriber, together with their respective signatures.  Such persons are the only persons so authorized until further written notice to the General Partner signed by one or more of such persons.

|            Name            |          Signature          |
| -------------------------- | --------------------------- |
| Doris P Ho                 |                             |
|                            |                             |
|                            |                             |
|                            |                             |
|                            |                             |

*Virgil Sigma Fund, LP*
*Suitability Questionnaire Page – 2*

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

Standing Wire Instructions

Until further written notice to the General Partner signed by one or more of the persons listed above, funds may be wired to Subscriber using the following instructions (must be to an account in the EXACT same name as the Subscriber).

_____ Name of Bank

_____ Address of Bank

_____ SWIFT Code/ABA Number

_____ Account Number

_____ Name Under Which Account Is Held

Payment Information

In connection with the efforts of the international financial community to avoid association with money-laundering activities or financial activities of persons identified as terrorists, the Partnership requests that Subscriber supply information regarding Subscriber's subscription payment *if such subscription payment is not being wired from the United States*.

(a)     Country of Wiring Bank          Hong Kong

(b)     Is the account at the Wiring Bank held in the name of Subscriber?

☑ Yes          ☐ No

(c)     Is Subscriber subject to regulation by any governmental agency with jurisdiction over financial institutions or financial intermediaries (e.g., banking, insurance or securities regulatory authorities)?

☐ Yes          ☑ No

If "Yes," please identify the regulator and explain the nature of the regulation:

_____

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

Legal Proceedings

Describe briefly any legal actions, including lawsuits, arbitrations and mediations, involving securities, commodities or other investments, in which you have been involved in the past five years.  Attach a separate page if necessary.  State the names of the parties to the proceeding, whether you were a plaintiff or defendant, where the action took place (i.e., name of court, location of arbitration), and a brief description of the dispute and the resolution of the matter.  Provide this information for Subscriber unless you are completing this Suitability Questionnaire as a representative of Subscriber (e.g., an officer of a corporation that is subscribing or a custodian for the account of a minor).  If you are acting as a representative, provide this information for yourself and, to the extent of your knowledge, for Subscriber.

None

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

## ADDITIONAL INFORMATION – ENTITY SUBSCRIBERS ONLY

Full Legal Name _____

Jurisdiction of Formation _____

Date Organized _____

Number of Partners, Shareholders,
Members or Beneficiaries _____

Purpose of Organization _____

_____

Was the Subscriber formed for the purpose of investing in the Partnership?

Yes ☐    No ☐

At the time of the investment in the Partnership, will the Partnership be the Subscriber's only investment?

Yes ☐    No ☐

What percentage of Subscriber's total assets will be accounted for by the Partnership?
_____%

Do any of the Subscriber's beneficial owners have the power to vary their level of participation in investments made by the entity on an investment by-investment basis?

Yes ☐    No ☐

Is the Subscriber an "investment company" as defined in the Investment Company Act of 1940, as amended (the "Investment Company Act")?

Yes ☐    No ☐

Is the Subscriber excluded from the definition of an investment company under the exceptions provided for in Sections 3(c)(1) or 3(c)(7) of the Investment Company Act?

Yes ☐    3(c)(7) ☐    3(c)(1) ☐

No ☐

*Virgil Sigma Fund, LP*
*Suitability Questionnaire Page - 5*

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

For purposes of completion of the Form PF, please check the form of organization of entity Subscriber. (If the Subscriber is acting as trustee, agent, representative or nominee for a beneficial owner, please check the item that best describes the beneficial owner.)  *Please check one*:

☐ broker-dealer

☐ insurance company

☐ investment company registered with the Securities and Exchange Commission

☐ private fund[1]

☐ non-profit

☐ pension plan (other than a governmental pension plan)

☐ banking or thrift institution (proprietary)

☐ state or municipal government entity[2] (other than a governmental pension plan)

☐ state or municipal governmental pension plan

☐ trust of a natural person resident in the United States

☐ other (please describe): _____

---

[1] The term "private fund" means any issuer that would be an investment company as defined in Section 3 of the Investment Company Act but for Section 3(c)(1) or 3(c)(7) of the Investment Company Act.

[2] For purposes of determining whether the subscriber is a state or municipal government entity, the term "government entity" means any state (including any U.S. state, the District of Columbia, Puerto Rico, the U.S. Virgin Islands or any other possession of the United States) or political subdivision of a state, including: (i) any agency, authority, or instrumentality of the state or political subdivision; (ii) a plan or pool of assets controlled by the state or political subdivision or any agency, authority, or instrumentality thereof; and (iii) any officer, agent, or employee of the state or political subdivision or any agency, authority, or instrumentality thereof, acting in their official capacity. However, please note that if you are a governmental pension plan, you should check the box for "State or municipal governmental pension plan" and not "State or municipal governmental entity."

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

**BENEFIT PLAN INVESTOR STATUS – ALL SUBSCRIBERS MUST COMPLETE**

In order for the Partnership to accurately monitor its benefit plan investor participation, please review the following definition of a benefit plan investor and make the appropriate representations by checking all applicable boxes following the definition.

A "Benefit Plan Investor" is (i) any employee benefit plan subject to the fiduciary responsibility provisions of Title I of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), (ii) any individual retirement plan or account subject to the prohibited transaction rules of Section 4975 of the Internal Revenue Code of 1986, as amended (the "Code") or (iii) any entity whose underlying assets include "plan assets" (as defined by ERISA and the regulations thereunder) by reason of a plan's investment in the entity.

The Subscriber represents that it is (please initial all applicable spaces):

A. _____ X _____    <u>not</u> a Benefit Plan Investor; or

B. _____    a Benefit Plan Investor that is

  1. _____    subject to Part 4 of Title I of ERISA;

  2. _____    subject to Section 4975 of the Code (that has not initialed B1);

  3. _____    an entity whose underlying assets include "plan assets".

  The Subscriber also represents that the percentage of its "plan assets" compared to the value of its total assets or included in its general account is not more than:

  ☐ 10%*  ☐ 20%*  ☐ 30%  ☐ 40%  ☐ 50%

  ☐ 60%  ☐ 70%  ☐ 80%  ☐ 90%  ☐ 100%

  * applicable to entities with multiple classes, one of which exceeds the 25% threshold for Benefit Plan Investors and to U.S. insurance company general accounts.

  4. _____    a group trust, a bank common or collective trust or an insurance company separate account.

The Subscriber further agrees (i) to notify the General Partner not less than 30 days prior to this representation (or any part thereof) no longer being true or likely to become untrue and (ii) to provide the General Partner upon request such information as may be required to confirm and/or refine the representations provided above.

Note: the Partnership does not currently intend to accept any subscription if the result thereof would be to make the assets of the Partnership "plan assets" for purposes of ERISA. The Partnership has the right to require the Subscriber's withdrawal in order to maintain this status.

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

**INDEPENDENT FIDUCIARY REPRESENTATIONS – INDEPENDENT FIDUCIARY OF BENEFIT PLAN INVESTORS ONLY**

The person signing below is the fiduciary of the Subscriber (the "Independent Fiduciary") and represents that the Subscriber is a Benefit Plan Investor.[3] The Independent Fiduciary further represents that the Subscriber's decision to invest in the Partnership was made by the Independent Fiduciary and the Independent Fiduciary: (i) has received and reviewed the Partnership's Confidential Private Placement Memorandum, as the same may be updated or modified from time to time (the "Memorandum"), and the First Amended and Restated Limited Partnership Agreement of the Partnership, as the same may be amended from time to time (the "Partnership Agreement"); (ii) is a fiduciary under ERISA or Section 4975 of the Code, or both, with respect to the Subscriber's decision to invest in the Partnership; (iii) is responsible for exercising independent judgment in evaluating the investment in the Partnership; (iv) (A) has no financial or ownership interest in the General Partner or any of its employees or affiliates, including, without limitation, the Partnership (collectively, the "Management Parties"); (B) has no other relationship, agreement or understanding with any Management Party that would limit the ability of the Independent Fiduciary to carry out its fiduciary responsibility to the Subscriber beyond the control, direction or influence of the Management Parties; and (C) is independent of the Management Parties; and (v) is capable of evaluating investment risks independently, both in general and with regard to particular transactions and investment strategies, including the decision on behalf of the Subscriber to invest in the Partnership.

The Independent Fiduciary further represents that it is (please initial all applicable spaces):

A. _____ an independent fiduciary that holds, or has under management or control, total assets of at least $50 million;

B. _____ a bank as defined in section 202 of the Investment Advisers Act of 1940, as amended (the "Investment Advisers Act") or similar institution that is regulated and supervised and subject to periodic examination by a state or federal agency;

C. _____ an insurance carrier which is qualified under the laws of more than one state to perform services of managing, acquiring or disposing of assets of a plan;

D. _____ an investment adviser that is registered under the Investment Advisers Act or, if not registered under the Investment Advisers Act by reason of paragraph (1) of section 203A of such Act, that is registered as an investment adviser under the laws of the state in which it maintains its principal office and place of business; or

E. _____ a broker-dealer that is registered under the Securities Exchange Act of 1934, as amended (the "Exchange Act").

---

[3] **IF THE SUBSCRIBER DOES NOT HAVE AN INDEPENDENT FIDUCIARY OR IF THE INDEPENDENT FIDUCIARY CANNOT EXECUTE THIS DOCUMENT, PLEASE CONTACT THE GENERAL PARTNER.**

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

The Independent Fiduciary further represents that none of the Management Parties is undertaking, or has undertaken, to provide impartial investment advice, or to give advice in a fiduciary capacity, in connection with the decision for the Subscriber to invest in the Partnership or otherwise. The General Partner's financial interests with respect to the Partnership are described in the Memorandum and the Partnership Agreement.

_____
Name of Subscriber (please print)

_____
Signature of Independent Fiduciary

_____
Name of Independent Fiduciary (please print)

_____
Title of Independent Fiduciary (if any)

_____
Date

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

**ACCREDITED INVESTOR STATUS - ALL SUBSCRIBERS COMPLETE**

The Subscriber certifies that the Subscriber is as an "accredited investor" as defined in Regulation D under the Securities Act of 1933, as amended (the "Securities Act") because the Subscriber is a(n):

Please initial all appropriate spaces.

**Individuals**

__X__ natural person whose individual net worth, or joint net worth with that person's spouse, at the time of his purchase exceeds $1,000,000. (For purposes of calculating net worth individuals should exclude the value of the primary residence and the related amount of indebtedness secured by the primary residence up to its fair market value.  Indebtedness secured by the primary residence in excess of the value of the primary residence should be considered a liability and deducted from net worth.  In addition, any increase in the amount of indebtedness secured by the primary residence in the 60 days prior to making the investment must be treated as a liability.)

_____ natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year.

_____ director, executive officer, or general partner of the issuer of the securities being offered or sold, or any director, executive officer, or general partner of a general partner of that issuer.

or

_____ none of the above apply.

**Institutions**

_____ bank as defined in section 3(a)(2) of the Securities Act, or any savings and loan association or other institution as defined in section 3(a)(5)(A) of the Securities Act whether acting in its individual or fiduciary capacity.

_____ broker or dealer registered pursuant to section 15 of the Exchange Act.

_____ insurance company as defined in section 2(a)(13) of the Securities Act.

_____ investment company registered under the Investment Company Act or a business development company as defined in section 2(a)(48) of that act.

_____ Small Business Investment Company licensed by the U.S. Small Business Administration under section 301(c) or (d) of the Small Business Investment Act of 1958.

_____ plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000.

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

_____employee benefit plan within the meaning of ERISA if the investment decision is made by a plan fiduciary, as defined in section 3(21) of such act, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors.

_____private business development company as defined in section 202(a)(22) of the Investment Advisers Act.

_____organization described in section 501(c)(3) of the Code, corporation, Massachusetts or similar business trust, or partnership, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of $5,000,000.

_____trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in Rule 506(b)(2)(ii).

_____entity in which all of the equity owners are accredited investors.

or

_____none of the above apply.

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

## QUALIFIED CLIENT STATUS - ALL SUBSCRIBERS COMPLETE

The Subscriber certifies that the Subscriber is a "qualified client" as defined in Rule 205-3 under the Investment Advisers Act because the Subscriber is a(n):

Please initial all appropriate spaces.

### Individuals

_____natural person who has at least $1,000,000 under the management of the General Partner after executing the Subscription Agreement.

\_\_\_X\_\_\_natural person who has a net worth (together with assets held jointly with a spouse) of more than $2,100,000 at the time of executing the Subscription Agreement.  (For purposes of calculating net worth individuals should exclude the value of the primary residence and the related amount of indebtedness secured by the primary residence up to its fair market value.  Indebtedness secured by the primary residence in excess of the value of the primary residence should be considered a liability and deducted from net worth.  In addition, any increase in the amount of indebtedness secured by the primary residence in the 60 days prior to making the investment must be treated as a liability).

_____natural person who is a qualified purchaser as defined in section 2(a)(51)(A) of the Investment Company Act at the time of executing the Subscription Agreement.

_____natural person who immediately prior to executing the Subscription Agreement is an executive officer, director, trustee, general partner, or person serving in a similar capacity, of the General Partner.

_____natural person who immediately prior to signing the Subscription Agreement is an employee of the General Partner (other than an employee performing solely clerical, secretarial or administrative functions with regard to the General Partner) who, in connection with his or her regular functions or duties, participates in the investment activities of such General Partner, provided that such employee has been performing such functions and duties for or on behalf of the General Partner, or substantially similar functions or duties for or on behalf of another company for at least 12 months.

or

_____none of the above apply.

### Institutions

**Entities (including a trust, corporation, partnership, limited liability company, association, joint-stock company, or any organized group of persons, whether incorporated or not):**

_____entity that has at least $1,000,000 under the management of the General Partner after executing the Subscription Agreement.

*Virgil Sigma Fund, LP*
*Suitability Questionnaire Page - 12*

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

_____entity that has a net worth of more than $2,100,000 at the time of executing the Subscription Agreement.

_____entity that is a qualified purchaser as defined in section 2(a)(51)(A) of the Investment Company Act at the time of executing the Subscription Agreement.

or

_____none of the above apply.

### Additional Certification for Institutions

**An entity that (1) would be defined as an investment company under the Investment Company Act but for the exception from that definition provided under Section 3(c)(1) of the Investment Company Act ("Section 3(c)(1) Fund"); (2) is an investment company registered under the Investment Company Act; or (3) is a "business development company" as defined in Section 202(a)(22) of the Investment Advisers Act MUST complete the additional certification below by initialing all appropriate spaces:**

_____each of the Subscriber's equity owners satisfies one or more of the qualified client criteria under "Individuals" or "Institutions" above.

_____the Subscriber represents that with respect to each of its equity owners that is a Section 3(c)(1) Fund, an investment company registered or required to be registered under the Investment Company Act or a business development company (if any), the Subscriber has determined that each ultimate beneficial owner of such an entity, after looking though all such entity owners, satisfies one or more of the qualified client criteria under "Individuals" or "Institutions" above.

_____the Subscriber represents that it has identified all equity owners who are not qualified clients (if any) and has the ability to, and does, allocate charges for performance fees so that its equity owners who are not qualified clients are not charged a performance fee.

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

## SUITABILITY QUESTIONNAIRE SIGNATURE PAGE

The Subscriber understands that the General Partner of the Partnership will be relying on the accuracy and completeness of the responses to the foregoing questions, and the Subscriber represents and warrants to each of them that: (i) the answers to the above questions are complete and correct and may be relied upon by the General Partner and Administrator in determining whether the offering in which the Subscriber proposes to participate is exempt from registration under federal and state securities laws; (ii) the Subscriber will notify the General Partner immediately of any material change in any statement made herein occurring prior to the closing of any purchase by the Subscriber of any Interests in the Partnership; and (iii) the Subscriber is able to bear the economic risk of the investment and, at the present time, can afford a complete loss of such investment.

The General Partner's primary mode of communication will be via e-mail.  Please indicate where written communications should be sent.   Please initial all that apply.

    __X__ Mailing Address

    _____ Residence or Principal Place of Business Address

    _____ Authorized Representative/Agent

Doris P Ho
_____
Name of Subscriber (please print)

_____
Signature and applicable title (if any)

05/28/2020
_____
Date

_____
Signature and applicable title (if more than one)

_____
Date

*Virgil Sigma Fund, LP*
*Suitability Questionnaire Page - 14*

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

# SUBSCRIPTION AGREEMENT

Virgil Sigma Fund, LP
c/o Theorem Fund Services
Chicago Board of Trade Building
141 West Jackson Boulevard, Suite 4120
Chicago, Illinois 60604

To Whom It May Concern:

The undersigned (the "Subscriber") wishes to become a limited partner of Virgil Sigma Fund, LP (the "Partnership"), a Cayman Islands exempted limited partnership, and to purchase a limited partnership interest (an "Interest") in the Partnership upon the terms and conditions set forth herein, in the Confidential Private Placement Memorandum of the Partnership, as the same may be updated or modified from time to time (the "Memorandum"), and in the First Amended and Restated Limited Partnership Agreement of the Partnership, as the same may be amended from time to time (the "Partnership Agreement"). Capitalized terms used herein but not defined herein shall have the meanings assigned to them in the Partnership Agreement.

Accordingly, the Subscriber agrees as follows:

1.      **Subscription.** The Subscriber hereby irrevocably subscribes for the dollar amount of Interests in the Partnership in the following amount:

Subscription Amount: US$ __250,000.00_____

Subscription Interest Class: __A_____

The General Partner, acting on behalf of itself and as attorney-in-fact on behalf of each of the other Partners in the Partnership, and the Subscriber each agree that, with effect from the General Partner's acceptance of the Subscriber's subscription pursuant to this subscription agreement (the "Subscription Agreement"), the Subscriber will be admitted to the Partnership as a Limited Partner and will be bound by and receive the benefit of the terms of the Partnership Agreement as a Limited Partner, and such terms are hereby incorporated by reference as if set out herein in full.  The Subscriber agrees that the offer to subscribe is not binding on the Partnership until it is accepted by the General Partner.  The Subscriber understands and agrees that the General Partner may accept or reject the amount of any subscription for an Interest in whole or in part.  If the subscription is rejected, payment received by the Partnership from the Subscriber, if any, will be returned, without interest, promptly to the Subscriber and this Subscription Agreement shall have no force or effect.  Upon acceptance of this subscription by the Partnership, the Subscriber shall become a Limited Partner of the Partnership.

2.      **Representations and Warranties of the Subscriber.**  To induce the General Partner to accept this Subscription Agreement on behalf of the Partnership, the Subscriber hereby represents, warrants and covenants to the General Partner and the Partnership as follows:

(a)      The Subscriber will not sell or otherwise transfer the Interest without registration under the U.S. Securities Act of 1933, as amended (the "Securities Act"), or an exemption therefrom. The Subscriber understands and agrees that it must bear the economic risk

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

of its investment for an indefinite period of time (subject to limited rights of withdrawal provided in the Partnership Agreement) because, among other reasons, the Interest has not been registered under the Securities Act or under the securities laws of certain states and, therefore, cannot be resold, pledged, assigned or otherwise disposed of unless it is so registered or an exemption from registration is available. The Subscriber understands that the Partnership is under no obligation to register the Interest on its behalf or to assist it in complying with any exemption from registration under the Securities Act. Furthermore, the Interest can only be transferred with the prior authorization of the General Partner, which may be withheld in the General Partner's sole discretion. The Subscriber understands and acknowledges that the General Partner in its sole discretion may cause a compulsory withdrawal of all or any portion of the Subscriber's Interest in accordance with the Partnership Agreement.

(b)     The Subscriber has received, carefully read and understands the Partnership Agreement and the Memorandum outlining, among other things, the organization and investment objectives and policies of, and the risks and expenses of an investment in, the Partnership. The Subscriber acknowledges that it has made an independent decision to invest in the Partnership and that, in making its decision to subscribe for an Interest, the Subscriber has relied solely upon the Memorandum, the Partnership Agreement and independent investigations made by the Subscriber. The Subscriber is not relying on the Partnership or the General Partner, or any other person or entity with respect to the legal, tax and other economic considerations involved in this investment other than the Subscriber's own advisers. The Subscriber's investment in the Interest is consistent with the investment purposes, objectives and cash flow requirements of the Subscriber and will not adversely affect the Subscriber's overall need for diversification and liquidity.

The Subscriber acknowledges that it is not subscribing pursuant hereto for an Interest as a result of any general solicitation or general advertising and is not subscribing as a result of or pursuant to: (i) any advertisement, article, notice or other communications published in any newspaper, magazine or similar media (including any internet site whose information about the Partnership is not password protected) or broadcast over television or radio; or (ii) any seminar or meeting whose attendees, including the Subscriber, had been invited as a result of, or pursuant to, any of the foregoing.

The Subscriber has been provided an opportunity to obtain any additional information concerning the offering, the Partnership and all other information to the extent the Partnership or the General Partner possesses such information or can acquire it without unreasonable effort or expense, and has been given the opportunity to ask questions of, and receive answers from, the General Partner concerning the terms and conditions of the offering and other matters pertaining to this investment.

(c)     The Subscriber agrees that the terms of offer and the rights attaching to the Interests, as set out in this Subscription Agreement, the Memorandum and the Partnership Agreement, can be varied in accordance with the provisions of the Partnership Agreement.

(d)     The Subscriber has not reproduced, duplicated or delivered the Memorandum, the Partnership Agreement or this Subscription Agreement to any other person, except

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

professional advisers to the Subscriber or as instructed by the General Partner. Notwithstanding the foregoing, the Subscriber (and each employee, representative or other agent of the Subscriber) may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of (i) the Partnership and (ii) any of its transactions, and all materials of any kind (including opinions or other tax analyses) that are provided to the Subscriber relating to such tax treatment and tax structure.

(e)    The Subscriber has, together with the purchaser representative, if any, such knowledge and experience in financial and business matters that the Subscriber is capable of evaluating the merits and risks of the Subscriber's investment in the Partnership and is able to bear such risks, and has obtained, in the Subscriber's judgment, sufficient information from the General Partner to evaluate the merits and risks of such investment. The Subscriber has evaluated the risks of investing in the Partnership, understands there are substantial risks of loss incidental to the purchase of an Interest and has determined that the Interest is a suitable investment for the Subscriber.

(f)    The Subscriber is aware of the limited provisions for transferability and withdrawal from the Partnership. The Subscriber has no need for liquidity in this investment, can afford a complete loss of the investment in the Interest and can afford to hold the investment for an indefinite period of time. The Subscriber acknowledges that distributions, including, without limitation, the proceeds of withdrawals, may be paid in cash or in-kind.

The Subscriber understands that the value of a Limited Partner's capital account and withdrawals therefrom under the Partnership Agreement, and the performance of the Partnership, may be based on unaudited and in some cases, estimated, valuations of the Partnership's investments and that valuations provided in a Subscriber's account statement may be an unaudited, estimated value.

(g)    The Subscriber is acquiring the Interest for its own account, for investment purposes only and not with a view toward distributing or reselling the Interest in whole or in part.

(h)    The Subscriber understands the method of compensation under the Partnership Agreement between the Partnership and the General Partner and its risks.

(i)    The Subscriber understands that no federal or state agency has passed upon the Interests or made any findings or determination as to the fairness of this investment.

(j)    The Subscriber has all requisite power, authority and capacity to acquire and hold the Interest and to execute, deliver and comply with the terms of each of the instruments required to be executed and delivered by the Subscriber in connection with the Subscriber's subscription for the Interest, including this Subscription Agreement, and such execution, delivery and compliance does not conflict with, or constitute a default under, any instruments governing the Subscriber, or violate any law, regulation or order, or any agreement to which the Subscriber is a party or by which the Subscriber may be bound. If the Subscriber is an entity, the person executing and delivering each of such instruments on behalf of the Subscriber has all requisite power, authority and capacity to execute and deliver such instruments, and such entity is duly formed and

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

organized, validly existing, and in good standing under the laws of its jurisdiction of formation, and such entity is authorized by its governing documents to execute, deliver, and perform its obligations under this Subscription Agreement and to become a limited partner in the Partnership. The person executing this Subscription Agreement on behalf of the Subscriber will, upon request by the Partnership or the General Partner, furnish to the Partnership true and correct copies of any instruments governing the Subscriber, including all amendments thereto.

(k)     All information which the Subscriber has provided to the Partnership or the General Partner concerning the Subscriber, the Subscriber's status, financial position and knowledge and experience of financial, tax and business matters, or, in the case of a Subscriber that is an entity, the knowledge and experience of financial, tax and business matters of the person making the investment decision on behalf of such entity, is correct and complete as of the date set forth herein.

(l)     Subscriber understands that the Partnership will not register as an investment company under the Investment Company Act of 1940, as amended (the "Investment Company Act"), nor will it make a public offering of its securities within the United States. The Subscriber understands that the Partnership complies with Section 3(c)(1) of the Investment Company Act, which excludes from the definition of investment company any issuer whose outstanding securities are beneficially owned exclusively by no more than 100 beneficial owners or fewer persons and which is not making and does not at that time propose to make a public offering of such securities.

If the Subscriber is an entity, the Subscriber represents that (i) it was not formed for the purpose of investing in the Partnership, (ii) it does not invest more than 40% of its total assets in the Partnership, (iii) each of its beneficial owners participates in investments made by the Subscriber pro rata in accordance with its interest in the Subscriber and, accordingly, its beneficial owners cannot opt in or out of investments made by the Subscriber, and (iv) its beneficial owners did not and will not contribute additional capital (other than previously committed capital) for the purpose of purchasing the Interests.

The Subscriber acknowledges that the Partnership reserves the right to refuse any transfer of the Interests if the effect of a transfer would cause the Partnership to be required to register as an investment company under the Investment Company Act.

(m)    The Subscriber understands that none of the General Partner, its principals or their respective affiliates are registered as investment advisers pursuant to the Investment Advisers Act, the securities laws of any U.S. state or the laws of the Cayman Islands.

(n)     The Subscriber represents and warrants that it is an "accredited investor" as such term is defined pursuant to Regulation D promulgated under the Securities Act and a "qualified client" as defined in Rule 205-3 under the Investment Advisers Act, the definitions of which are set forth in the attached suitability questionnaire ("Suitability Questionnaire"). The Subscriber further understands that none of the General Partner, its principals or their respective affiliates is registered as investment advisers pursuant to the Investment Advisers Act, the securities laws of any U.S. state or the laws of the Cayman Islands.

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

*[If the Subscriber is not an "accredited investor" or a "qualified client," the Subscriber should strike through the appropriate part of this section.]*

(o)  If the Subscriber is a "plan" as defined in Section 3(3) of the U.S. Employee Retirement Income Security Act of 1974, as amended ("ERISA") that is subject to the provisions of Title I of ERISA, and/or a "plan" that is subject to the prohibited transaction provisions of Section 4975 of the U.S. Internal Revenue Code of 1986, as amended (the "Code"), or an entity whose assets are treated as "plan assets" under Section 3(42) of ERISA and any regulations promulgated thereunder (a "Plan"), the person executing this Subscription Agreement on behalf of the Plan (the "Fiduciary") represents and warrants to the Partnership that:

(i)  such person is a "fiduciary" of such Plan and trust and/or custodial account within the meaning of Section 3(21) of ERISA, and/or Section 4975(e)(3) of the Code and such person is authorized to execute the Subscription Agreement;

(ii)  unless otherwise indicated in writing to the Partnership, the Plan is not a participant-directed defined contribution plan;

(iii)  the Fiduciary has considered a number of factors with respect to the Plan's investment in the Interest and has determined that, in view of such considerations, the purchase of an Interest is consistent with the Fiduciary's responsibilities under ERISA. Such factors include, but are not limited to: (a) the role such investment or investment course of action plays in that portion of the Plan's portfolio that the Fiduciary manages; (b) whether the investment or investment course of action is reasonably designed as part of that portion of the portfolio managed by the Fiduciary to further the purposes of the Plan, taking into account both the risk of loss and the opportunity for gain that could result therefrom; (c) the composition of that portion of the portfolio that the Fiduciary manages with regard to diversification; (d) the liquidity and current rate of return of that portion of the portfolio managed by the Fiduciary relative to the anticipated cash flow requirements of the Plan; (e) the projected return of that portion of the portfolio managed by the Fiduciary relative to the funding objectives of the Plan; and (f) the risks associated with an investment in the Partnership and the fact that the Subscriber has only limited withdrawal rights;

(iv)  the investment in the Partnership has been duly authorized under, and conforms in all respects to, the documents governing the Plan and the Fiduciary;

(v)  the Fiduciary is: (a) responsible for the decision to invest in the Partnership; (b) independent of the Partnership; and (c) qualified to make such investment decision;

(vi)  (a) none of the General Partner, any of its employees or affiliates: (i) manages any part of the Subscriber's investment portfolio on a discretionary basis; (ii) regularly gives investment advice with respect to the assets of the Subscriber; (iii) has an agreement or understanding, written or unwritten, with the Subscriber under which the latter receives information, recommendations or advice concerning investments which are used as a primary basis for the

*Virgil Sigma Fund, LP*
*Subscription Agreement Page - 19*

Subscriber's investment decisions; or (iv) has an agreement or understanding, written or unwritten, with the Subscriber under which the latter receives individualized investment advice concerning the Subscriber's assets;

OR

(b): (i) the Fiduciary, who is independent of the General Partner, has studied the Memorandum and has made an independent decision to purchase Interests solely on the basis of such Memorandum and without reliance on any other information or statements as to the appropriateness of this investment for the Subscriber; and (ii) the Subscriber represents and warrants that neither the General Partner nor any of its employees or affiliates: (A) has exercised any investment discretion or control with respect to the Subscriber's purchase of Interests; (B) has authority, responsibility to give, or has given individualized investment advice with respect to the Subscriber's purchase of the Interests; or (C) is the employer maintaining or contributing to such Plan.

(p)   If the Subscriber is an insurance company and is investing the assets of its general account (or the assets of a wholly owned subsidiary of its general account) in the Partnership, it has identified in the Suitability Questionnaire whether the assets underlying the general account constitute "plan assets" within the meaning of Section 401(c) of ERISA. The Subscriber agrees to promptly notify the General Partner in writing if there is a change in the percentage of the general account's assets that constitute "plan assets" within the meaning of Section 401(c) of ERISA and shall disclose such new percentage ownership.

(q)   If the Subscriber is an investment company ("Investment Company") as defined in Section 3(a) of the Investment Company Act or an Investment Company that is exempt from registration pursuant to Section 3(c)(1) or Section 3(c)(7) of the Investment Company Act (a "3(c)(1) or 3(c)(7) Company"), the Subscriber recognizes that the Partnership is restricted by law as to the number of beneficial interests held in the Partnership, and, that in determining the number of beneficial interests in the Partnership, it may be necessary, in certain circumstances, to count the beneficial owners of the Subscriber if it owns 10% or more of the limited partner's interests in the Partnership. Accordingly, the Subscriber agrees (i) to notify the General Partner prior to making a capital contribution, if it is a 3(c)(1) or 3(c)(7) Company or an Investment Company; (ii) to take whatever action is requested by the Partnership to have its interest in the Partnership be less than 10% of the total interests of the limited partners; and (iii) that the General Partner of the Partnership may require the Subscriber to redeem at any time so much of its interest as is necessary to keep such interest below 10%.

(r)   If the Subscriber is a "charitable remainder trust" within the meaning of Section 664 of the Code, the Subscriber has advised the General Partner in writing of such fact and the Subscriber acknowledges that it understands the risks, including specifically the tax risks, if any, associated with its investment in the Partnership.

(s)   If the Subscriber is purchasing in a representative or fiduciary capacity, the representations and warranties herein shall be deemed to have been made on behalf of

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

the person or persons for whom the Subscriber is so purchasing, and the Subscriber agrees to furnish to the General Partner, upon request, documentation satisfactory to the General Partner in the General Partner's sole discretion, supporting the truthfulness of such representations and warranties as made on behalf of such person or persons.

(t)     The Subscriber understands and agrees that, although the Partnership will use its reasonable efforts to keep the information provided in the answers to this Subscription Agreement strictly confidential, the Partnership may present this Subscription Agreement and the information provided in answers to it to such parties (*e.g.,* affiliates, attorneys, auditors, administrators, brokers, other service providers and/or regulators) as it deems necessary or advisable to facilitate the acceptance and management of the Subscriber's subscription amounts including, but not limited to, in connection with anti-money laundering and similar laws, if called upon to establish the availability under any applicable law of an exemption from registration of the Interests, the compliance with applicable law and any relevant exemptions thereto by the Partnership, the General Partner or its affiliates, or if the contents thereof are relevant to any issue in any action, suit or proceeding to which the Partnership, the General Partner or its affiliates are a party or by which they are or may be bound or if the information is required to facilitate the Partnership's investments. The Partnership may also release information about the Subscriber (and any beneficial owners of the Subscriber) if directed to do so by the Subscriber, if compelled to do so by law or in connection with any government or self-regulatory organization request or investigation. Any such disclosure shall not be treated as a breach of any restriction upon the disclosure of information imposed on such person by law or otherwise.

(u)     The Subscriber acknowledges that, if the Subscriber has used the services of a purchaser representative in connection with an investment in the Partnership, such purchaser representative has disclosed, by submitting a Purchaser Representative Letter attached as Appendix 6 to these subscription documents, any material relationship between such purchaser representative or such purchaser representative's affiliates and the Partnership and its affiliates that now exists or mutually is understood to be contemplated or that has existed at any time during the previous two years, and further setting forth any compensation received or to be received as a result of such relationship.

(v)     The Subscriber acknowledges that in implementing the investment strategies of the Partnership, the General Partner may arrange, without the Limited Partner's consent, for securities to be bought or sold between the Partnership and the accounts of other clients of the General Partner (including other partnerships and entities) in order to achieve the mix of securities required by the strategies.

(w)     The Subscriber is not a "U.S. Person" as defined in the Code.[1]

---

[1]     "U.S. Person" shall include (i) any natural person resident in the United States; (ii) any partnership or corporation organized or incorporated under the laws of the U.S.; (iii) any estate of which any executor or administrator is a U.S. person; (iv) any trust of which any trustee is a U.S. person; (v) any agency or branch of a foreign entity located in the U.S.; (vi) any non-discretionary account or similar account (other than an estate or trust) held by a dealer or other fiduciary for the benefit or account of a U.S. person; (vii) any discretionary account or similar account (other than an estate or trust) held by a dealer or other fiduciary organized, incorporated, or (if an individual) resident in the U.S.; and (viii) any partnership or corporation if: (A) organized or incorporated under the laws of any foreign jurisdiction; and (B) formed by a U.S. person principally for the purpose of investing in securities not registered under the U.S. Securities Act of 1933, as amended, unless it is organized or incorporated, and owned, by accredited investors who are not natural persons, estates or trusts.

*Virgil Sigma Fund, LP*
*Subscription Agreement Page - 21*

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

If any answers provided or background documentation required under this Subscription Agreement is found to be false, forged or misleading, the Subscriber understands that the General Partner may require such Subscriber to fully withdraw from the Partnership as permitted under the Partnership Agreement.

3.    **U.S. Foreign Account Tax Compliance Act.**

(a)    For the purposes of the following provisions, "FATCA" means:

(i)    sections 1471 to 1474 of the Code and any associated legislation, regulations or guidance, or similar legislation, regulations or guidance enacted in any jurisdiction which seeks to implement similar tax reporting and/or withholding tax regimes;

(ii)    the OECD Standard for Automatic Exchange of Financial Account Information in Tax Matters - the Common Reporting Standard (the "CRS") and any legislation, regulations or guidance in the Cayman Islands that gives effect to the principles and requirements of the CRS;

(iii)    any intergovernmental agreement, treaty, regulation, guidance or any other agreement between the Cayman Islands (or any Cayman Islands government body) and the United States, the United Kingdom or any other jurisdiction (including any government bodies in such jurisdiction), entered into in order to comply with, facilitate, supplement or implement the legislation, regulations or guidance described in paragraph (i) and (ii); and

(iv)    any legislation, regulations or guidance in the Cayman Islands that give effect to the matters outlined in the preceding sub-paragraphs.

(b)    The Subscriber acknowledges and agrees that:

(i)    the Partnership is required to comply with the provisions of FATCA;

(ii)    it will provide, in a timely manner, such information regarding the Subscriber and its beneficial owners and such forms or documentation as may be requested from time to time by the Partnership (whether by its General Partner or other agents such as the Administrator) to enable the Partnership to comply with the requirements and obligations imposed on it pursuant to FATCA, specifically, but not limited to, forms and documentation which the Partnership may require to determine whether or not the relevant investment is a "Reportable Account" under any FATCA regime and to comply with the relevant due diligence procedures in making such determination;

(iii)    any such forms or documentation requested by the Partnership or its agents pursuant to paragraph (ii), or any financial or account information with respect to the Subscriber's investment in the Partnership, may be disclosed to the Cayman Islands Tax Information Authority (or any other Cayman Islands governmental body which collects information in accordance with FATCA) and to any withholding agent where the provision of that information is

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

required by such agent to avoid the application of any withholding tax on any payments to the Partnership;

(iv) it waives, and/or shall cooperate with the Partnership to obtain a waiver of, the provisions of any law which:

(A) prohibit the disclosure by the Partnership, or by any of its agents, of the information or documentation requested from the Subscriber pursuant to paragraph (b); or

(B) prohibit the reporting of financial or account information by the Partnership or its agents required pursuant to FATCA; or

(C) otherwise prevent compliance by the Partnership with its obligations under FATCA;

(v) if it provides information and documentation that is in any way misleading, or it fails to provide the Partnership or its agents with the requested information and documentation necessary in either case to satisfy the Partnership's obligations under FATCA, the Partnership reserves the right (whether or not such action or inaction leads to compliance failures by the Partnership, or a risk of the Partnership or its investors being subject to withholding tax or other penalties under FATCA):

(A) to take any action and/or pursue all remedies at its disposal including, without limitation, compulsory withdrawal of the Subscriber;

(B) to hold back from any withdrawal proceeds, or to deduct from the Subscriber's applicable NAV, any liabilities, costs, expenses or taxes caused (directly or indirectly) by the Subscriber's action or inaction; and

(C) it shall have no claim against the Partnership, or its agents, for any form of damages or liability as a result of actions taken or remedies pursued by or on behalf of the Partnership in order to comply with FATCA.

(c) The Subscriber hereby indemnifies the Partnership, the General Partner, the Administrator, and each of their respective principals, members, managers, officers, directors, stockholders, employees and agents (each, an "Additional Indemnified Party") and hold them harmless from and against any FATCA related liability, action, proceeding, claim, demand, costs, damages, expenses (including legal expenses) penalties or taxes whatsoever which the Partnership, the General Partner and/or the Administrator may incur as a result of any action or inaction (directly or indirectly) of the Subscriber (or any related person) described in paragraphs (a) to (f) above. This indemnification shall survive the Subscriber's death or disposition of its Interests in the Partnership.

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

4.    **AML Representations.**

(a)    The Subscriber understands and agrees that the Partnership prohibits the investment of funds by any persons or entities that are acting, directly or indirectly, (i) in contravention of any Cayman Islands or other international laws and regulations, including anti-money laundering regulations or conventions, (ii) on behalf of terrorists or terrorist organizations, including those persons or entities that are included on the List of Specially Designated Nationals and Blocked Persons maintained by the United States Treasury Department's Office of Foreign Assets Control[2] ("OFAC"), as such list may be amended from time to time, (iii) for a senior foreign political figure, any member of a senior foreign political figure's immediate family or any close associate of a senior foreign political figure,[3] unless the General Partner, or the party that it designates to perform anti-money laundering compliance for the Partnership on its behalf, after being specifically notified by the Subscriber in writing that it is such a person, conducts further due diligence, and determines that such investment shall be permitted, or (iv) for a foreign shell bank[4] (such persons or entities in (i) – (iv) are collectively referred to as "Prohibited Persons").

(b)    The Subscriber represents, warrants and covenants that: (i) it is not, nor is any person or entity controlling, controlled by or under common control with the Subscriber, a Prohibited Person, and (ii) to the extent the Subscriber has any beneficial owners,[5] (A) it has carried out thorough due diligence to establish the identities of such beneficial owners, (B) based on such due diligence, the Subscriber reasonably believes that no such beneficial owners are Prohibited Persons, (C) it holds the evidence of such identities and status and will maintain all such evidence for at least five years from the date of the Subscriber's complete withdrawal from the Partnership, and (D) it will make available such information and any additional information that the Partnership may require upon request.

(c)    If any of the foregoing representations, warranties or covenants ceases to be true or if the Partnership no longer reasonably believes that it has satisfactory evidence as to their truth, notwithstanding any other agreement to the contrary, the Partnership may be obligated to freeze the Subscriber's investment, either by prohibiting additional investments, declining or suspending any withdrawal requests and/or segregating the

---

[2]    The OFAC list may be accessed on the web at http://www.treas.gov/ofac.

[3]    Senior foreign political figure means a current or former senior official in the executive, legislative, administrative, military or judicial branches of a foreign government (whether elected or not), a senior official of a major foreign political party, or a senior executive of a foreign government-owned corporation. In addition, a senior foreign political figure includes any corporation, business or other entity that has been formed by, or for the benefit of, a senior foreign political figure. The immediate family of a senior foreign political figure typically includes the political figure's parents, siblings, spouse, children and in-laws. A close associate of a senior foreign political figure is a person who is widely and publicly known internationally to maintain an unusually close relationship with the senior foreign political figure, and includes a person who is in a position to conduct substantial domestic and international financial transactions on behalf of the senior foreign political figure.

[4]    Foreign shell bank means a foreign bank without a physical presence in any country, but does not include a regulated affiliate. A post office box or electronic address would not be considered a physical presence. A regulated affiliate means a foreign shell bank that: (1) is an affiliate of a depository institution, credit union, or foreign bank that maintains a physical presence in the United States or a foreign country, as applicable; and (2) is subject to supervision by a banking authority in the country regulating such affiliated depository institution, credit union, or foreign bank.

[5]    Beneficial owners will include, but not be limited to: (i) shareholders of a corporation; (ii) partners of a partnership; (iii) members of a limited liability company; (iv) investors in a fund-of-funds; (v) the grantor of a revocable or grantor trust; (vi) the beneficiaries of an irrevocable trust; (vii) the individual who established an IRA; (viii) the participant in a self-directed pension plan; (ix) the sponsor of any other pension plan; and (x) any person being represented by the Subscriber in an agent, representative, intermediary, nominee or similar capacity. If the beneficial owner is itself an entity, the information and representations set forth herein must also be given with respect to its individual beneficial owners. If the Subscriber is a publicly-traded company, it need not conduct due diligence as to its beneficial owners.

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

assets constituting the investment in accordance with applicable regulations, or the Subscriber's investment may immediately be involuntarily withdrawn by the Partnership, and the Partnership may also be required to report such action and to disclose the Subscriber's identity to OFAC or other authorities. In the event that the Partnership is required to take any of the foregoing actions, the Subscriber understands and agrees that it shall have no claim against the Partnership, the General Partner, the General Partner and their respective affiliates, directors, members, partners, shareholders, officers, employees and agents for any form of damages as a result of any of the aforementioned actions.

(d)     The Subscriber understands and agrees that any withdrawal proceeds paid to it will be paid to the same account from which the Subscriber's investment in the Partnership was originally remitted, unless the General Partner, in its sole discretion, agrees otherwise.

(e)     The Subscriber acknowledges and understands that if, as a result of any information or other matter which comes to his attention, any person resident in the Cayman Islands (including the Partnership, the Limited Partners and the Administrator) knows or suspects or has reasonable grounds for knowing or suspecting that another person is engaged in criminal conduct or is involved with terrorism or terrorism property and that information for that knowledge or suspicion came to their attention in the course of business in the regulated sector, or other trade, profession, business or employment, the person will be required to report such knowledge or suspicion to (i) the Financial Reporting Authority ("FRA") or a nominated officer (appointed in accordance with the Proceeds of Crime Law (Revised) of the Cayman Islands), if the disclosure relates to criminal conduct or money laundering, or (ii) the FRA or a police constable or a nominated officer, pursuant to the Terrorism Law (Revised), if the disclosure relates to involvement with terrorism or terrorist financing and terrorist property; and such a report shall not be treated as a breach of confidence or of any restriction upon the disclosure of information imposed by any enactment or otherwise.

(f)     The Partnership reserves the right to request such information as is necessary to verify the identity of a Subscriber or its beneficial owners. To ensure compliance with statutory and other requirements relating to anti-money laundering, the Partnership may require verification of identity from any person submitting a completed Agreement. Pending the provision of evidence satisfactory to the Partnership as to identity, the evidence of title in respect of Limited Partnership interests may be retained in the absolute discretion of the Partnership. If within a reasonable period of time following a request for verification of identity, the Partnership has not received evidence satisfactory to each as aforesaid, it may, in its absolute discretion, refuse to admit the Subscriber to the Partnership, in which event subscription monies will be returned without interest to the account from which such monies were originally debited. Subscription monies may be rejected by the Partnership if the remitting bank or financial institution is unknown to the Partnership. Additionally, the Partnership and/or Administrator may request such further information as considered necessary to process a withdrawal request and may refuse to remit withdrawal proceeds (that is "freeze" the withdrawal proceeds) until proper and satisfactory information has been provided. The Administrator shall have no liability if there are losses due to a delay in or refusal to admit the Subscriber, as a result of inadequate information from the

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

applicant. An individual may be required to produce a copy of a passport or identification card certified by a notary public. If the Subscriber is an entity, it may be required to produce a certified copy of its certificate of incorporation (and change of name), memorandum and articles of association (or other comparable organizational documents), and the names, occupations, dates of birth, and residential and business addresses of all directors.

5.   **Reliance on Representations and Warranties.** The Subscriber understands the meaning of the representations and warranties contained in this Subscription Agreement and in the Suitability Questionnaire and understands and acknowledges that the Partnership and the General Partner are relying upon the representations and warranties contained in this Subscription Agreement and in the Suitability Questionnaire in determining whether the offering is eligible for exemption from the registration requirements contained in the Securities Act and in determining whether to accept the subscription tendered hereby. The Subscriber represents and warrants that the information contained in this Subscription Agreement and in the Suitability Questionnaire is true and correct as of the date hereof and agrees to notify immediately the General Partner of any changes in such information (or, if there have been any changes in the information provided to the Partnership by the Subscriber in the Suitability Questionnaire since the date the Suitability Questionnaire was furnished, the Subscriber has advised the Partnership in writing of such changes). The Subscriber hereby agrees to indemnify and hold harmless the Partnership and each general and limited partner thereof from and against any and all losses, damages, expenses, liabilities or reasonable attorneys' fees (including attorneys' fees and expenses incurred in a securities or other action in which no judgment in favor of the Subscriber is rendered) due to or arising out of a breach of any representation or warranty of the Subscriber, whether contained in the Partnership Agreement, this Subscription Agreement or the Suitability Questionnaire. Notwithstanding any of the representations, warranties, acknowledgments or agreements made in this Subscription Agreement and in the Suitability Questionnaire by the Subscriber, the Subscriber does not thereby or in any other manner waive any rights granted to the Subscriber under federal or state securities law.

6.   **Survival of Representations and Warranties.** In the event that this subscription is accepted, the Subscriber agrees that the representations, warranties and agreements set forth in this Subscription Agreement and in the Suitability Questionnaire shall survive the acceptance of this subscription.

7.   **Indemnification.** The Subscriber agrees to indemnify and hold harmless the Partnership, the General Partner, the Administrator and each of their affiliates, and each other person, if any, who controls, is controlled by, or is under common control with, any of the foregoing (each, an "Indemnified Party"), within the meaning of Section 15 of the Securities Act, against any and all loss, liability, claim, damage and expense whatsoever (including all expenses reasonably incurred in investigating, preparing or defending against any claim whatsoever) arising out of or based upon (i) any false representation or warranty made by the Subscriber, or breach or failure by the Subscriber to comply with any covenant or agreement made by the Subscriber, in this Subscription Agreement or in any other document furnished by the Subscriber to any of the foregoing in connection with this transaction or (ii) any action for securities law violations instituted by the Subscriber which is finally resolved by judgment against the Subscriber. The Subscriber also agrees to indemnify the Partnership, the General Partner and their affiliates and agents for any and all costs, fees and expenses (including legal fees and disbursements) in connection with any damages resulting from the Subscriber's

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

assertion of lack of proper authorization from the beneficial owner to enter into this Subscription Agreement or perform the obligations hereof.

8.   **Communications to Subscriber.**  The Subscriber represents, warrants and agrees that by providing the Partnership with an e-mail address, Subscriber consents to the receipt of statements, reports and other communications (including but not limited to net asset value information, subscription and withdrawal activity and audited financial statements) relating to the Partnership and Subscriber's investment in the Partnership in electronic form.  Subscriber represents that Subscriber has accessed this Agreement as an Adobe PDF document and understands Adobe PDF will be the format in which audited financial statements will be provided.  By consenting to electronic receipt of communications, Subscriber acknowledges that e-mails and other electronic communications from the Partnership, the General Partner and/or the Administrator may be accessed by recipients other than the Subscriber and may be interfered with, may contain computer viruses or other defects and may not be successfully replicated on other systems.  The Partnership, the General Partner and the Administrator each give no warranties in relation to these matters.  Subscriber understands and agrees that Subscriber's consent to receipt of electronic statements, reports and other communications shall be valid until Subscriber withdraws such consent by notifying the Partnership and the General Partner in writing.  Such withdrawal of consent will take effect on a subsequent date determined by the Partnership and communicated to the Subscriber within a reasonable period of time after the Partnership receives the written withdrawal of consent, and the withdrawal of consent will not apply to any statements, reports or other communications that were furnished electronically before the date on which the withdrawal of consent becomes effective. Subscriber understands and agrees that audited financial statements will be furnished on paper if Subscriber does not consent to electronic receipt.  Subscriber represents and warrants that Subscriber has all necessary hardware and software necessary to access, print and retain the electronic statements, reports and other communications.

9.   **Binding Nature.**  Upon acceptance by the Partnership of the subscription of the Subscriber, the Subscriber will become a Limited Partner and be bound by the terms of the Partnership Agreement.

9.   **Entire Agreement.**  This Subscription Agreement, together with the Partnership Agreement and any applicable side letter agreements entered into between a Limited Partner and the General Partner, constitutes the entire understanding of the parties with respect to the subject matter hereof and supersedes all prior or contemporaneous agreements or understandings of the parties related hereto.  This Subscription Agreement may only be modified or amended by an instrument in writing signed by the parties hereto.

10.  **Representation by Counsel.**  The Subscriber understands that Cole-Frieman & Mallon LLP has acted as U.S. legal counsel to the Partnership and the General Partner and their affiliates, and Ogier has acted as Cayman Islands counsel to the Partnership, in connection with this offering of Interests. The Subscriber also understands that, in connection with this offering of Interests and subsequent advice to the Partnership and the General Partner and their affiliates, Cole-Frieman & Mallon LLP and Ogier will not be representing investors in the Partnership, including the Subscriber, and no independent counsel has been retained to represent investors in the Partnership.

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

The Subscriber further acknowledges and agrees that Cole-Frieman & Mallon LLP's and Ogier's representation of the Partnership, the General Partner and its affiliates is limited to specific matters as to which each firm has been consulted by the Partnership, the General Partner and/or its affiliates. There may exist other matters which could have a bearing on the Partnership, the General Partner or its affiliates as to which the respective firms have not been consulted. In addition, Cole-Frieman & Mallon LLP and Ogier do not undertake to monitor the compliance of the General Partner and its affiliates with the investment program, valuation procedures and other guidelines set forth in the Memorandum, nor do such firms monitor compliance with applicable laws. In preparing the Memorandum, Cole-Frieman & Mallon LLP and Ogier rely upon information furnished to them by the Partnership, the General Partner and/or its affiliates, and do not investigate or verify the accuracy and completeness of information set forth therein concerning the Partnership, the General Partner and their affiliates and personnel.

11. **Power of Attorney.**  The Subscriber hereby adopts and agrees to all of the terms and conditions of the Partnership Agreement and constitutes and appoints the General Partner (and any additional or substitute general partner) as the Subscriber's true and lawful attorney-in-fact pursuant to Section 10.01 of the Partnership Agreement.

12. **Applicable Law.**  This Subscription Agreement and any dispute, claim, suit, action or proceeding of whatever nature arising out of or in any way related to it or its formation (including any non-contractual disputes or claims) are governed by, and shall be construed in accordance with, the laws of the Cayman Islands.

    Each of the parties to this Subscription Agreement irrevocably agrees that the courts of the Cayman Islands shall have non-exclusive jurisdiction to hear and determine any claim, suit, action or proceeding, and to settle any disputes, which may arise out of or are in any way related to or in connection with this Subscription Agreement, and, for such purposes, irrevocably submits to the non-exclusive jurisdiction of such courts.

13. **Construction.**  If any provision of this Subscription Agreement is invalid or unenforceable under any applicable law, then such provision shall be deemed inoperative to the extent that it may conflict therewith and shall be deemed modified to conform with such applicable law. Any provision hereof which may be held invalid or unenforceable under any applicable law shall not affect the validity or enforceability of any other provisions hereof, and to this extent the provisions hereof shall be severable.

14. **Counterparts.**  This Subscription Agreement may be executed through the use of separate signature pages or in any number of counterparts. The counterparts shall, for all purposes, constitute one agreement binding on all the parties, notwithstanding that all parties do not execute the same counterpart.

15. **Third Party Rights.**  A person who is not a party to this Subscription Agreement may not, in its own right or otherwise, enforce any term of this Subscription Agreement except that each Indemnified Party and each Additional Indemnified Party may in their own right enforce Section 3(c) and Section 7 (as applicable) of this Subscription Agreement subject to and in accordance with the provisions of the Contracts (Rights of Third Parties) Law, 2014, as amended, modified, re-enacted or replaced.

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

Notwithstanding any other term of this Subscription Agreement, the consent of any person who is not a party to this Subscription Agreement (including, without limitation, any Indemnified Party or Additional Indemnified party) is not required for any amendment to, or variation, release, rescission or termination of this Subscription Agreement.

16.    **Waiver of Rights.** The Subscriber agrees that it shall not file a winding up petition on the just and equitable ground against the Partnership in the Grand Court of the Cayman Islands or make any other equivalent application before the courts of any other jurisdiction in connection with the Partnership's suspension of any of the calculation of net asset value, the Subscriber's withdrawal rights or the Subscriber's right to receive withdrawal proceeds.

[Signatures on following page.]

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

## SUBSCRIPTION AGREEMENT SIGNATURE PAGE

The undersigned has executed this Agreement on this __28__ day of ___may___, 20 _20_.

Doris P Ho
_____
Name of Subscriber (please print)

_____
Signature of Authorized Signatory[6]

_____
Title of Authorized Signatory (if any)

28/05/2020
_____
Date

_____
Signature of Authorized Signatory

_____
Title of Authorized Signatory (if any)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## TO BE COMPLETED BY THE PARTNERSHIP

ACCEPTED THIS _29th_ DAY OF _May___, 20 _20_.

VIRGIL SIGMA FUND, LP

By:    Virgil Capital LLC
       General Partner

By:    Stefan Qin
       _____
       Name: Stefan Qin
       Title: Managing Member

Subscription Amount: US$ ____250,000_____

Subscription Interest Class: _____A_____

Effective Date of Subscription: __June 1st, 2020_____

---

[6]    If the Subscriber is an IRA or a self-directed pension plan or this Subscription Agreement is being executed by a directed trustee, the custodian or trustee of the Subscriber executes this Subscription Agreement and the fiduciary who directed the IRA's or pension plan's investment in the Partnership is required to execute the Additional Representation attached hereto.

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

**ADDITIONAL REPRESENTATION WITH RESPECT TO INVESTMENT FROM AN IRA OR SELF-DIRECTED PENSION PLAN OR BY A DIRECTED TRUSTEE**

If the Subscriber is an IRA or a self-directed pension plan or this Subscription Agreement is being executed by a directed trustee, the individual who established the IRA or the person who directed the pension plan's investment in the Partnership, as the case may be: (i) has directed the custodian or trustee of the Subscriber to execute this Subscription Agreement on the line set forth above for Authorized Signatory; (ii) has exclusive authority with respect to the decision to invest in the Partnership; and (iii) has signed below to indicate that he or she has reviewed, directed and certifies to the accuracy of the representation and warranties made by the Subscriber herein.

_____

Name

_____

Signature

Name and Address of Custodian/Trustee
and Contact Individual:

_____

_____

_____

Account or other Reference Number:

_____

Custodian's Tax I.D. Number:

_____

## APPENDIX 1 – CAYMAN ISLANDS TAX INFORMATION AUTHORITY SELF-CERTIFICATION FORM

### Individual Self-Certification

**Instructions for completion**

We are obliged under the Tax Information Authority Law, the Regulations, and Guidance Notes made pursuant to that Law, and treaties and intergovernmental agreements entered into by the Cayman Islands in relation to the automatic exchange of information for tax matters (collectively "AEOI"), to collect certain information about each account holder's tax status. Please complete the sections below as directed and provide any additional information that is requested. Please note that we may be obliged to share this information with relevant tax authorities. Terms referenced in this Form shall have the same meaning as applicable under the relevant Cayman Islands Regulations, Guidance Notes or international agreements.

If any of the information below regarding your tax residence or AEOI classification changes in the future, please ensure you advise us of these changes promptly. If you have any questions about how to complete this form, please contact your tax advisor.

Please note that where there are joint account holders each investor is required to complete a separate Self-Certification form.

**Section 1: Account Holder Identification**

Doris P Ho

| Account Holder Name | Date of Birth (dd/mm/yyyy) | Place and Country of Birth |
|---|---|---|

**Permanent Residence Address:**

| State/Province/County | Post Code | Country |
|---|---|---|

**Mailing address (if different from above):**

| Number & Street | City/Town | |
|---|---|---|

| State/Province/County | Post Code | Country |
|---|---|---|

*Virgil Sigma Fund, LP*
*Appendix 1*

**Section 2: Declaration of U.S. Citizenship or U.S. Residence for Tax purposes**

Please tick either (a) **or** (b) **or** (c) and complete as appropriate.

(a) ☐ I confirm that **I am** a U.S. citizen and/or resident in the U.S. for tax purposes (green card holder or resident under the substantial presence test) and my U.S. federal taxpayer identifying number ("U.S. TIN") is as follows:

_____.

(b) ☐ I confirm that I was born in the U.S. (or a U.S. territory) but am no longer a U.S. citizen as I have voluntarily surrendered my citizenship as evidenced by the attached documents.

(c) ☑ I confirm that **I am not** a U.S. citizen or resident in the U.S. for tax purposes.

**Complete section 3 if you have non-U.S. tax residences.**

**Section 3: Declaration of Tax Residency (other than U.S.)**

I hereby confirm that I am, for tax purposes, resident in the following countries (indicate the tax reference number type and number applicable in each country).

| Country/countries of tax residency | Tax reference number type | Tax reference number |
|---|---|---|
| Canada | Passport | █████████ |
|  |  |  |
|  |  |  |

Please indicate not applicable if jurisdiction does not issue or you are unable to procure a tax reference number or functional equivalent. If applicable, please specify the reason for non-availability of a tax reference number:

_____

**Section 4: Declaration and Undertakings**

I declare that the information provided in this form is, to the best of my knowledge and belief, accurate and complete.

I undertake to advise the recipient promptly and provide an updated Self-Certification form within 30 days where any change in circumstances occurs which causes any of the information contained in this form to be inaccurate or incomplete.

Where legally obliged to do so, I hereby consent to the recipient sharing this information with the relevant tax information authorities.

Signature: _____

Date: (dd/mm/yyyy): 09/27/2020 _____

*Virgil Sigma Fund, LP*
*Appendix 1*

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

## APPENDIX 2 – CAYMAN ISLANDS TAX INFORMATION AUTHORITY SELF-CERTIFICATION FORM

### Entity Self-Certification

**Instructions for completion**

We are obliged under the Tax Information Authority Law, the Regulations, and Guidance Notes made pursuant to that Law, and treaties and intergovernmental agreements entered into by the Cayman Islands in relation to the automatic exchange of information for tax matters (collectively "AEOI"), to collect certain information about each account holder's tax status. Please complete the sections below as directed and provide any additional information that is requested.  Please note that we may be obliged to share this information with relevant tax authorities.  Terms referenced in this Form shall have the same meaning as applicable under the relevant Cayman Islands Regulations, Guidance Notes or international agreements.

If any of the information below regarding your tax residence or AEOI classification changes in the future, please ensure you advise us of these changes promptly. If you have any questions about how to complete this form, please refer to accompanying guidelines for completion or contact your tax advisor.

### PART I: General

**Section 1: Account Holder Identification**

Legal Name of Entity/ Branch          Country of Incorporation/ organization

**Current Residence or Registered Address:**

Number & Street                    City/Town

State/Province/County      Post Code                Country

**Mailing address (if different from above):**

Number & Street                    City/Town

State/Province/County      Post Code                Country

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

# PART II: US IGA

## Section 2: U.S. Persons

Please tick and complete as appropriate.

(a) ☐ The entity is a **Specified U.S. Person** and the entity's U.S. federal taxpayer identifying number ("U.S. TIN") is as follows:

_____ .

(b) ☐ The entity is a U.S. Person that is not a Specified U.S. Person.  Indicate exemption[10]

_____ .

If the entity is not a U.S. person, please complete Section 3.

## Section 3: US FATCA Classification for all Non United States Entities

Please complete this section if the entity is **not** a *U.S. Person*

3.1 If the entity is a ***Registered Foreign Financial Institution,*** please tick one of the below categories, and provide the entity's *FATCA GIIN at 3.1.1.*

(a) ☐ Reporting Model 1 FFI

(b) ☐ Registered Deemed Compliant Foreign Financial Institution (other than a reporting Model 1 FFI, sponsored FFI, or non-reporting IGA FFI)

(c) ☐ Reporting Model 2 FFI

(d) ☐ Participating Foreign Financial Institution

3.1.1 Please provide your *Global Intermediary Identification number* ("GIIN"):

_____

(if registration in progress indicate so)

---

[10]Under the US IGA and in the U.S. Internal Revenue Code, Specified US Person does not include: An organization exempt from tax under section 501(a) or any individual retirement plan as defined in section 7701(a)(37); The United States or any of its agencies or instrumentalities; A state, the District of Columbia, a possession of the United States, or any of their political subdivisions, or instrumentalities; A corporation the stock of which is regularly traded on one or more established securities markets, as described in Reg. section 1.1472-1(c)(1)(i); A corporation that is a member of the same expanded affiliated group as a corporation described in Reg. section 1.1472-1(c)(1)(i); A dealer in securities, commodities, or derivative financial instruments (including notional principal contracts, futures, forwards, and options) that is registered as such under the laws of the United States or any state; A real estate investment trust;  A regulated investment company as defined in section 851 or an entity registered at all times during the tax year under the Investment Company Act of 1940; A common trust fund as defined in section 584(a); A bank as defined in section 581; A broker; A trust exempt from tax under section 664 or described in section 4947; or A tax-exempt trust under a section 403(b) plan or section 457(g) plan.

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

3.2 If the entity is a ***Financial Institution but unable to provide a GIIN or has a Sponsored Entity GIIN***, please complete one of the below categories:

    (a)    ☐ The Entity is a Sponsored Financial Institution (sponsored by another entity that has registered as a Sponsoring Entity and select one):

        (i)    ☐ has no US reportable accounts, is a Sponsored FI in a Model 1 IGA jurisdiction and therefore not required to obtain a Sponsored Entity GIIN. Please provide the Sponsoring Entity's name and GIIN.

Sponsoring Entity's Name: _____

Sponsoring Entity's GIIN: _____

        (ii)    ☐ its Sponsor has obtained a Sponsored Entity GIIN on its behalf.

Please provide the Sponsoring Entity's name and GIIN, and Sponsored Entity's GIIN.

Sponsoring Entity's Name: _____

Sponsoring Entity's GIIN: _____

Sponsored Entity's GIIN: _____

    (b)    ☐ The Entity is a Trustee Documented Trust.  Please provide the Trustee's name and GIIN.

Trustee's Name: _____

Trustee's GIIN: _____

    (c)    ☐ The Entity is a Certified Deemed Compliant, or otherwise Non-Reporting, Foreign Financial Institution (including a Foreign Financial Institution deemed compliant under Annex II of an IGA, except for a Trustee Documented Trust or Sponsored Financial Institution).  Indicate exemption:

_____

    (d)    ☐ The Entity is a Non-Participating Foreign Financial Institution.

3.3    If the entity is **not a Foreign Financial Institution**, please confirm the Entity's FATCA status below:

    (a)    ☐ The Entity is an ***Exempt Beneficial Owner***[11]  Indicate status:

_____

    (b)    ☐ The Entity is an ***Active Non-Financial Foreign Entity***[12]. Indicate qualifying criteria (see Exhibit A):

_____

---

[11] *"Exempt Beneficial Owner"* means any of the entities listed as such in Annex II.I of the US IGA or Section 1.1471-6 or 1.1471-6T of the U.S. Treasury Regulations. See additional notes in Exhibit A
[12] See definition of *Active Non-Financial Foreign Entity* in Exhibit A

*Virgil Sigma Fund, LP*
*Appendix 2*

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

(c)        ☐ The Entity is a ***Direct Reporting NFFE***[13], please provide the Entity's GIIN:

Direct Reporting NFFE's GIIN: _____

(d)        ☐ The Entity is a ***Sponsored Direct Reporting NFFE***[14]. Please provide the Sponsoring Entity's name and GIIN.

Sponsoring Entity's Name: _____

Sponsoring Entity's GIIN: _____

Sponsoring Entity's GIIN: _____

(e)        ☐ The Entity is a ***Passive Non-Financial Foreign Entity***[15].

**If you have ticked 3.3(e) *Passive Non-Financial Foreign Entity*, please complete either i. OR ii. below**

(i)        Indicate the full name, address, and tax reference type and number of any Substantial U.S. Owners.

If the Entity has chosen to use the definition of 'Substantial U.S. Owner' from the U.S. Treasury Regulations in lieu of the definition of 'Controlling Person' as permitted under Article 4(7) of the Agreement between the Government of the Cayman Islands and the Government of the United States of America to Improve International Tax Compliance and to Implement FATCA, please complete the table below providing details of any Substantial U.S. Owners[16].

**Note: The decision to utilize the definition of 'Substantial U.S. Owner' in lieu of Controlling Person is only permitted with respect to PART II: US IGA.**

| Full Name | Full residence address | Tax reference type and number |
|-----------|------------------------|-------------------------------|
|           |                        |                               |
|           |                        |                               |
|           |                        |                               |

OR

(ii)        Alternatively, if you wish to use the Controlling Person definition as per the CRS definition in Exhibit A then please complete the following:

Please indicate the name of any Controlling Person(s)[17]:

| Full Name of any Controlling Person(s) |
|----------------------------------------|
|                                        |
|                                        |
|                                        |

**Please complete Part IV below providing further details of any ultimate Controlling Persons who are natural persons**

---

[13] See US Treasury FATCA Regulations, 26 CFR 1.1472-1(c)(3)
[14] See US Treasury FATCA Regulations, 26 CFR 1.1472-1(c)(3)
[15] See definition of Passive Non-Financial Foreign Entity in Exhibit A
[16] See definition of Substantial U.S. Owner(s) in Exhibit A.
[17] See definition of Controlling Person(s) in Exhibit A.

*Virgil Sigma Fund, LP*
*Appendix 2*

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

## PART III: Common Reporting Standard

### Section 4: Declaration of All Tax Residency [repeat any residences indicated in Part II, Section 2 (US)].

Please indicate the Entity's place of tax residence (if resident in more than one jurisdiction please detail all jurisdictions and associated tax reference number type and number).

For the purposes of the Common Reporting Standard ("CRS"), all matters in connection with residence are determined in accordance with the CRS and its Commentaries.

If an entity has no residence for tax purposes please indicate the jurisdiction in which its place of effective management is situated. Please indicate not applicable if jurisdiction does not issue or you are unable to procure a tax reference number or functional equivalent, and indicate the reason below.

| Jurisdiction(s) tax residency | Tax reference number type | Tax reference number (e.g. TIN) |
|---|---|---|
| | | |
| | | |
| | | |

**If applicable, please specify the reason for non-availability of a tax reference number:**

_____

### Section 5: CRS Classification

Provide your CRS classification by checking the corresponding box(es). Note that CRS classification does not necessarily coincide with your classification for US FATCA purposes.

**5.1** ☐ If the entity **is a** *Financial Institution*[18], please tick this box and specify the type of Financial Institution in (a), (b), or (c) below[19]:

(a) ☐ Reporting Financial Institution under CRS. (Please note this classification only applies to a Financial Institution in a CRS Participating Jurisdiction. If the entity is a Financial Institution in a Non-Participating Jurisdiction[20] under CRS, proceed to 5.1 (c)).

OR

(b) ☐ Non-Reporting Financial Institution under CRS. (Please note this classification only applies to a Financial Institution in a CRS Participating Jurisdiction. If the entity is a Financial Institution in a Non-Participating Jurisdiction under CRS, proceed to 5.1 (c)). Specify the type of Non-Reporting Financial Institution below:

---

[18] See definition of *Financial Institution* in Exhibit B.
[19] Where the entity is resident in a Participating Jurisdiction, use the terms as defined under the CRS regime in that Jurisdiction. Where the entity is resident in a Non-Participating Jurisdiction, definitions under the Cayman Islands CRS regime must be used.
[20] See definition of *Non-Participating Jurisdiction* in Exhibit B.

*Virgil Sigma Fund, LP*
*Appendix 2*

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

☐    Governmental Entity

☐    International Organization

☐    Central Bank

☐    Broad Participation Retirement Fund

☐    Narrow Participation Retirement Fund

☐    Pension Fund of a Governmental Entity, International Organization, or Central Bank

☐    Exempt Collective Investment Vehicle

☐    Trust whose trustee reports all required information with respect to all CRS Reportable Accounts

☐    Qualified Credit Card Issuer

☐    Other Entity defined under the domestic law as low risk of being used to evade tax.

Specify the type provided in the domestic law:

_____

(c)   ☐    Financial Institution resident in a Non-Participating Jurisdiction under CRS. Specify the type of Financial Institution below:

(i)    ☐ Investment Entity managed by another Financial Institution[21] where a controlling ownership interest is held (directly or indirectly) by a company listed on a stock exchange and subject to disclosure requirements or is a majority owned subsidiary of such a company.

(ii)    ☐ Investment Entity managed by another Financial Institution (other than i. above)

(iii)    Note: if you are either:

(A)    a widely-held, regulated Collective Investment Vehicle (CIV) established as a trust;

OR

(B)    a pension fund established as a trust,

you may apply the Controlling Persons test of a legal person as per the Controlling Person definition in Exhibit B, and where simplified due diligence procedures are permitted to be applied by the Financial Institution under the applicable AML

---

[21] The managing Financial Institution must be a Financial Institution other than an Investment Entity type b) defined within the definition of a Financial Institution in Exhibit B.

*Virgil Sigma Fund, LP*
*Appendix 2*

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

regime[22] in relation to the Account Holder and its Controlling Persons, no further information is required.

If you have ticked this box for 5.1(c) ii, and neither of the exemptions under (A) and (B) above applies, please indicate the name of the *Controlling Person(s)* in the table below.

| Full Name of any Controlling Person(s).<br>Please see definition in Exhibit B.<br>(This table must not be left blank unless exemption (a) or (b) above applies) |
| --- |
|  |
|  |
|  |

Please also complete Part IV below providing further details of any ultimate Controlling Persons who are natural persons.

(iv)  ☐ Other Investment Entity

(v)  ☐ Other Financial Institution, including a Depositary Financial Institution, Custodial Institution, or Specified Insurance Company.

**5.2**  ☐ If the entity is an *Active Non-Financial Entity* ("NFE") please tick this box and specify the type of NFE below:

(a)  ☐ Corporation that is regularly traded or a related entity of a regularly traded corporation.

Provide the name of the stock exchange where traded:

_____

If you are a related entity of a regularly traded corporation, provide the name of the regularly traded corporation:

_____

(b)  ☐ Governmental Entity, International Organization, a Central Bank, or an Entity wholly owned by one or more of the foregoing

(c)  ☐ Other Active Non-Financial Foreign Entity[23] *Indicate qualifying criteria (see Exhibit B)*

_____

**5.3**  ☐ If the entity is a *Passive Non-Financial Entity* please tick this box.[24]

If you have ticked this box please indicate the name of the *Controlling Person(s)*. Please refer to the definition of Controlling Person in Exhibit B.

---

[22] Please contact the Financial institution to confirm whether simplified due diligence procedures under the Cayman Islands AML regime may apply to you as an Account Holder (e.g. by being a regulated pension fund in an approved jurisdiction).
[23] See definition of *Active Non-Financial Entity* in Exhibit B.
[24] Please see the definition of *Passive Non-Financial Entity* in Exhibit B.

*Virgil Sigma Fund, LP*
*Appendix 2*

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

| Full Name of any Controlling Person(s) | *(must not be left blank)* |
|---|---|
|  |  |
|  |  |
|  |  |

Please complete Part V below providing further details of any ultimate Controlling Persons who are natural persons

**Entity Declaration and Undertakings**

I/We declare (as an authorised signatory of the Entity) that the information provided in this form is, to the best of my/our knowledge and belief, accurate and complete. I/We undertake to advise the recipient promptly and provide an updated Self-Certification form within 30 days where any change in circumstances occurs, which causes any of the information contained in this form to be inaccurate or incomplete. Where legally obliged to do so, I/we hereby consent to the recipient sharing this information with the relevant tax information authorities.

I/we acknowledge that it is an offence to make a self-certification that is false in a material particular.

Authorised Signature: _____     Authorised Signature: _____

Position/Title: _____     Position/ Title: _____

Date: (dd/mm/yyyy): _____     Date: (dd/mm/yyyy): _____

**PART IV: Controlling Persons**

**(please complete for each Controlling Person)**

**Section 6 – Identification of a Controlling Person**

**6.1  Name of Controlling Person:**

Family Name or Surname(s): _____

First or Given Name: _____

Middle Name(s): _____

**6.2  Current Residence Address:**

Line 1 *(e.g. House/Apt/Suite Name, Number, Street)*

_____

Line 2 *(e.g. Town/City/Province/County/State)*

_____

*Virgil Sigma Fund, LP*
*Appendix 2*

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

Country: _____

Postal Code/ZIP Code: _____

**6.3 Mailing Address: (please complete if different from 8.2)**

Line 1 *(e.g. House/Apt/Suite Name, Number, Street)*

_____

Line 2 *(e.g. Town/City/Province/County/State)*

_____

Country: _____

Postal Code/ZIP code: _____

**6.4 Date of birth[25] (dd/mm/yyyy)**

_____

**6.5 Place of birth[26]**

Town or City of Birth _____

Country of Birth _____

**6.6 Please enter the legal name of the <u>relevant</u> entity Account Holder(s) of which you are a Controlling Person**

Legal name of Entity 1 _____

Legal name of Entity 2 _____

Legal name of Entity 3 _____

**Section 7 – Jurisdiction of Residence for Tax Purposes and related Taxpayer Reference Number or functional equivalent ("TIN")**

Please complete the following table indicating:

*(i) where the Controlling Person is tax resident;*

*(ii) the Controlling Person's TIN for each jurisdiction indicated[27]; and,*

*(iii) if the Controlling Person is a tax resident in a jurisdiction that is a Reportable Jurisdiction(s) then please also complete Section 10 "Type of Controlling Person".*

*If the Controlling Person is tax resident in more than three jurisdictions please use a separate sheet*

---

[25] The Controlling Person's date of birth is not required to be collected if the Controlling Person is not a Reportable Jurisdiction Person.
[26] The Controlling Person's place of birth is not required to be collected if the Controlling Person is not a Reportable Jurisdiction Person.
[27] The Controlling Person's TIN is not required to be collected if the Controlling Person is not a Reportable Jurisdiction Person.

*Virgil Sigma Fund, LP*
*Appendix 2*

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

|   | Jurisdiction(s) of tax residency | Tax reference number type | Tax reference number (e.g. TIN) |
|---|---|---|---|
| **1** | | | |
| **2** | | | |
| **3** | | | |

If applicable, please specify the reason for non-availability of a tax reference number:

_____

### Section 8 – Type of Controlling Person

(Please only complete this section if you are tax resident in one or more Reportable Jurisdictions)

| Please provide the Controlling Person's Status by ticking the appropriate box. | Entity 1 | Entity 2 | Entity 3 |
|---|---|---|---|
| **a.** Controlling Person of a legal person – *control by ownership* | ☐ | ☐ | ☐ |
| **b.** Controlling Person of a legal person – *control by other means* | ☐ | ☐ | ☐ |
| **c.** Controlling Person of a legal person – *senior managing official* | ☐ | ☐ | ☐ |
| **d.** Controlling Person of a trust – *settlor* | ☐ | ☐ | ☐ |
| **e.** Controlling Person of a trust – *trustee* | ☐ | ☐ | ☐ |
| **f.** Controlling Person of a trust – *protector* | ☐ | ☐ | ☐ |
| **g.** Controlling Person of a trust – *beneficiary* | ☐ | ☐ | ☐ |
| **h.** Controlling Person of a trust – *other* | ☐ | ☐ | ☐ |
| **i.** Controlling Person of a legal arrangement (non-trust) – *settlor-equivalent* | ☐ | ☐ | ☐ |
| **j.** Controlling Person of a legal arrangement (non-trust) – *trustee-equivalent* | ☐ | ☐ | ☐ |
| **k.** Controlling Person of a legal arrangement (non-trust) – *protector-equivalent* | ☐ | ☐ | ☐ |
| **l.** Controlling Person of a legal arrangement (non-trust) – *beneficiary-equivalent* | ☐ | ☐ | ☐ |
| **m.** Controlling Person of a legal arrangement (non-trust) – *other-equivalent* | ☐ | ☐ | ☐ |

*Virgil Sigma Fund, LP*
*Appendix 2*

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

**Controlling Person Declaration and Undertakings**

I acknowledge that the information contained in this form and information regarding the Controlling Person and any Reportable Account(s) may be reported to the tax authorities of the jurisdiction in which this account(s) is/are maintained and exchanged with tax authorities of another jurisdiction(s) in which [I/the Controlling Person] may be tax resident pursuant to international agreements to exchange financial account information.

I certify that either (a) I am the Controlling Person, or am authorised to sign for the Controlling Person, of all the account(s) held by the entity Account Holder to which this form relates or (b) I am authorised by the Account Holder to make this declaration.

**I declare that all statements made in this declaration are, to the best of my knowledge and belief, correct and complete.**

I acknowledge that it is an offence to make a self-certification that is false in a material particular.

I undertake to advise the recipient within 30 days of any change in circumstances which affects the tax residency status of the individual identified in Part 1 of this form or causes the information contained herein to become incorrect, and to provide the recipient with a suitably updated self-certification and Declaration within 30 days of such change in circumstances.

Signature: _____

Print name: _____

Date: _____

**Note**: If you are not the Controlling Person, and not authorised to sign the Declaration on behalf of the Account Holder, please indicate the capacity in which you are signing the form on behalf of the Controlling Person. If signing under a power of attorney or other equivalent written authorisation, on behalf of the Controlling Person, please also attach a certified copy of the power of attorney or written authorisation.

Capacity: _____

*Virgil Sigma Fund, LP*
*Appendix 2*

(g)   The NFFE was not a Financial Institution in the past five years, and is in the process of liquidating its assets or is reorganizing with the intent to continue or recommence operations in a business other than that of a Financial Institution;

(h)   The NFFE primarily engages in financing and hedging transactions with or for Related Entities that are not Financial Institutions, and does not provide financing or hedging services to any Entity that is not a Related Entity, provided that the group of any such Related Entities is primarily engaged in a business other than that of a Financial Institution; or

(i)   The NFFE is an "excepted NFFE" as described in relevant U.S. Treasury Regulations; or

(j)   The NFFE meets all of the following requirements:

(k)   It is established and maintained in its country of residence exclusively for religious, charitable, scientific, artistic, cultural, athletic or educational purposes; or it is established and operated in its jurisdiction of residence and it is a professional organization, business league, chamber of commerce, labor organization, agricultural or horticultural organization, civic league or an organization operated exclusively for the promotion of social welfare;

(l)   It is exempt from income tax in its country of residence;

(m)   It has no shareholders or members who have a proprietary or beneficial interest in its income or assets;

(n)   The applicable laws of the Entity's country of residence or the Entity's formation documents do not permit any income or assets of the Entity to be distributed to, or applied for the benefit of, a private person or non- charitable Entity other than pursuant to the conduct of the Entity's charitable activities, or as payment of reasonable compensation for services rendered, or as payment representing the fair market value of property which the Entity has purchased; and

(o)   The applicable laws of the Entity's country of residence or the Entity's formation documents require that, upon the Entity's liquidation or dissolution, all of its assets be distributed to a governmental entity or other non-profit organization, or escheat to the government of the Entity's jurisdiction of residence or any political subdivision thereof.

*Code* means the U.S Internal Revenue Code of 1986, as amended.

*Controlling Person* means the natural persons who exercise direct or indirect control over an entity. In the case of a trust, such term means the settlor, the trustees, the protector (if any), the beneficiaries or class of beneficiaries, and any other natural person exercising ultimate effective control over the trust, and in the case of a legal arrangement other than a trust, such term means persons in equivalent or similar positions. The term 'Controlling Persons' shall be interpreted in a manner consistent with the Financial Action Task Force Recommendations ("FATF").

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

FATF Recommendations on Controlling Persons:

Identify the beneficial owners of the customer and take reasonable measures to verify the identity of such persons, through the following information. For legal persons[1]:

(a)     The identity of the natural persons (if any – as ownership interests can be so diversified that there are no natural persons (whether acting alone or together) exercising control of the legal person or arrangement through ownership) who ultimately have a controlling ownership interest[2] in a legal person; and

(b)     to the extent that there is doubt under (a) as to whether the person(s) with the controlling ownership interest are the beneficial owner(s) or where no natural person exerts control through ownership interests, the identity of the natural persons (if any) exercising control of the legal person or arrangement through other means.

(c)     Where no natural person is identified under (a) or (b) above, financial institutions should identify and take reasonable measures to verify the identity of the relevant natural person who holds the position of senior managing official.

*Entity* means a legal person or a legal arrangement such as a trust.

*Exempt Beneficial Owners* under the US IGA include Government entities, International Organizations, Central Bank, Broad Participation Retirement Funds, Narrow Participation Retirement Funds, Pension Funds of an Exempt Beneficial Owner, and Investment Entities wholly owned by Exempt Beneficial Owners. Please refer to the IGA for detailed definitions.

*Financial Institution* means a Custodial Institution, a Depository Institution, an Investment Entity, or a Specified Insurance Company, where:

(a)     *Custodial Institution* means any entity that holds, as a substantial portion of its business, financial assets for the account of others. An entity holds financial assets for the account of others as a substantial portion of its business if the entity's gross income attributable to the holding of financial assets and related financial services equals or exceeds 20 percent of the Entity's gross income during the shorter of: (i) the three-year period that ends on 31 December (or the final day of a non-calendar year accounting period) prior to the year in which the determination is being made; or (ii) the period during which the entity has been in existence;

(b)     *Depository Institution* means any entity that accepts deposits in the ordinary course of a banking or similar business;

(c)     *Investment Entity* means any entity that conducts as a business (or is managed by an entity that conducts as a business) one or more of the following activities or operations for or

---

[1] Measures (a) to (b) are not alternative options, but are cascading measures, with each to be used where the previous measure has been applied and has not identified a beneficial owner.
[2] A controlling ownership interest depends on the ownership structure of the company. It may be based on a threshold, e.g. any person owning more than a certain percentage of the company (e.g. 25%).

*Virgil Sigma Fund, LP*
*Appendix 2*

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

on behalf of a customer: (1) trading in money market instruments (cheques, bills, certificates of deposit, derivatives, etc.); foreign exchange; exchange, interest rate and index instruments; transferable securities; or commodity futures trading; (2) individual and collective portfolio management; or (3) otherwise investing, administering, or managing funds or money on behalf of other persons. The term Investment entity shall be interpreted in a manner consistent with similar language set forth in the definition of "financial institution" in the Financial Action Task Force Recommendations; and

(d)   *Specified Insurance Company* means any entity that is an insurance company (or the holding company of an insurance company) that issues, or is obligated to make payments with respect to, a Cash Value Insurance Contract or an Annuity Contract.

*NFFE* means any Non-U.S. Entity that is not a Financial Institution as defined in US FATCA.

*Non-U.S. Entity* means an Entity that is not a U.S. Person.

*Passive Non-Financial Foreign Entity* means any NFFE that is not an Active Non-Financial Foreign Entity.

*Related Entity* An entity is a *Related Entity* of another entity if either entity controls the other entity, or the two entities are under common control. For this purpose control includes direct or indirect ownership of more than 50 percent of the vote or value in an entity. Notwithstanding the foregoing, either Party may treat an entity as not a related entity if the two entities are not members of the same affiliated group, as defined in Section 1471(e)(2) of the Code.

*Specified U.S. Person* means a U.S. Person other than:

(a)   a corporation the stock of which is regularly traded on established securities markets;

(b)   any corporation that is a member of the same expanded affiliated group;

(c)   the United States or any wholly owned agency or instrumentality thereof;

(d)   any State of the United States, any U.S. Territory, any political subdivision or wholly owned agency or instrumentality of any        one or more of the foregoing;

(e)   any organization exempt from taxation under section 501 (a) of the Internal Revenue Code (the "Code") or certain individual retirement plans defined in section 7701(a)(37) of the Code ;

(f)   any bank as defined in section 581 of the Code;

(g)   any real estate investment trust as defined in section 856 of the Code;

(h)   any regulated investment company defined in section 851 of the Code or any entity registered with the U.S. Securities and Exchange Commission under the Investment Company Act of 1940;

(i)   any common trust fund as defined in section 584(a) of the Code;

DocuSign Envelope ID: 7E2783EA-685E-43CB-8434-046D81F1DA90

(j)    any trust that is exempt from tax under section 664(c) of the Code or that is described in 4947(a)(1) of the Code;

(k)    a dealer in securities, commodities, or derivative financial instruments that is registered as such under the laws of the United States or any State;

(l)    a broker as defined in section 6045(c) of the Code; or

(m)    any tax-exempt trust under a plan that is described in section 403(b) or section 457(g) of the Code.

**Substantial U.S. Owner** (as defined in Regulations section 1.1473-1(b)) means generally:

(a)    With respect to any foreign corporation, any Specified U.S. Person that owns, directly or indirectly, more than 10 percent of the stock of such corporation (by vote or value);

(b)    With respect to any foreign partnership, any Specified U.S. Person that owns, directly or indirectly, more than 10 percent of the profits interests or capital interests in such partnership; and

(c)    In the case of a trust–

(i)    Any Specified U.S. Person treated as an owner of any portion of the trust under sections 671 through 679 of the IRC; and

(ii)    Any Specified U.S. Person that holds, directly or indirectly, more than 10 percent of the beneficial interests of the trust.

**U.S. Person** means a U.S. citizen or resident individual, a partnership or corporation organized in the United States or under the laws of the United States or any State thereof, a trust if (i) a court within the United States would have authority under applicable law to render orders or judgments concerning substantially all issues regarding administration of the trust, and (ii) one or more U.S. persons have the authority to control all substantial decisions of the trust, or an estate of a decedent that is a citizen or resident of the United States.  Refer to the U.S. Internal Revenue Code for further interpretation.